In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3522

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES R. SCHRODE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-cr-30014 — **Sue E. Myerscough**, *Judge.*

ARGUED APRIL 12, 2016 — DECIDED OCTOBER 7, 2016

Before WOOD, *Chief Judge,* and FLAUM and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Charles Schrode was convicted in state court for predatory criminal assault of a four-year-old family member. He later pled guilty in federal court to videotaping assaults of the same child on two other dates, and receiving and possessing child pornography of other victims.

He was sentenced to 630 months' imprisonment for the fed-
eral offenses, some of which was to run consecutively to his
state sentence. On appeal, Schrode argues that none of his fed-
eral sentence should run consecutively to his state sentence.
But we affirm Schrode's sentence. The district court did not
err in applying some of his federal sentence to run consecu-
tively to his state sentence, because it did not clearly err in
finding that his state offense was not relevant conduct for all
of his federal offenses.

Schrode also received a life term of supervised release,
which he now challenges, along with several of the conditions
of supervised release, which he argues improperly delegate
judicial power to the probation office. However, not only did
the district court adequately justify its reasons for imposing a
life term of supervision, Schrode also waived any challenges
to his conditions of supervised release by affirmatively with-
drawing his objections to those conditions at the sentencing
hearing. Nonetheless, we grant a limited remand to bring the
sentencing calculation for Schrode's production offenses in
compliance with 18 U.S.C. § 2251(e).

## I. BACKGROUND

### A. Schrode's Offenses

On April 7, 2013, Schrode committed predatory sexual as-
sault against Jane Doe, a four-year-old family member. He
pled guilty in state court in February 2014 and was sentenced
to 18 years' imprisonment.

In June 2013, the FBI executed a search warrant of
Schrode's home in Springfield Illinois. The search led to the
discovery that in May 2012, Schrode sent child pornography
from Illinois to a man in Michigan. In exchange, Schrode

watched the Michigan man through streaming video and directed him through web chats as he sexually assaulted his son. The FBI discovered over 200 still images and four videos of child pornography on Schrode's computer in his Illinois home. In June 2014, when Schrode was in state custody, his wife discovered videos of him sexually assaulting Jane at the home of a family friend in February and March 2013. She gave the video footage to Jane's father, who turned it over to the FBI.

Schrode was indicted on four federal counts: first, for receiving child pornography of the Michigan victim in May 2012; second, for producing child pornography by videotaping his sexual assault of Jane in February 2013; third, for producing child pornography of Jane in March 2013; and fourth, for possessing child pornography that the FBI discovered on his computer in June 2013. He pled guilty to all counts.

### B. Application of Sentencing Guidelines

At Schrode's sentencing hearing, the district court grouped Schrode's offenses pursuant to U.S.S.G. § 3D1.1. The first group included counts one and four (receipt and possession of child pornography), the second group contained the single count of production of child pornography in February 2013, and the third group contained the single count of production of child pornography in March 2013. Production of child pornography is not a groupable offense. U.S.S.G. § 3D1.2(d). The district court explicitly addressed the presentence report finding that Schrode's state offense was relevant conduct to the "instant offense." The judge noted that she was unsure the conduct which led to Schrode's state sentence was relevant to his federal offenses because "these were three sep-

arate rapes and two of these rapes involved child pornography production. Those are the two I'm dealing with. And they were in a different period of time." Ultimately the judge determined that although she had "grave reservations that it is relevant conduct," she would treat the rape for which Schrode was serving his state court sentence as relevant conduct for his production counts (counts 2 and 3). The judge then calculated a sentence of 60 months for the receipt count, 363 months for each production count, and 240 months for the possession count.

In addition to determining the prison term for each count, the court had to decide whether the sentence for each group would run concurrently or consecutively to the state prison sentence by applying § 5G1.3 of the Guidelines. It concluded that because the state prison sentence was for conduct relevant to the production counts, Schrode's time served for the state sentence would be credited to those sentence terms, which would also run concurrently with the state term of imprisonment. However, because the state sentence did not involve conduct that was relevant to the offenses of receipt and possession of pornography (Jane did not appear in any of the pornography that formed the basis of those counts), those sentences would run consecutively to the state court sentence. In making its ruling, the district court stated it was relying on both § 5G1.3(b) and (d) of the Guidelines. Schrode objected to the court's finding that the offense underlying the state sentence was relevant conduct for some of the counts but not others. Ultimately, the court imposed an aggregate sentence of 630 months' imprisonment, with an adjusted sentence of 330 months for the production counts (starting with 663 months and then crediting the 33 months already served on state sentence), to run concurrently with Schrode's state sentence and

with each other; 240 months for the possession count, to run consecutively with the other federal counts and his state sentence; and 60 months for the receipt count, to run consecutively with the other federal counts and the state sentence.

## C. Conditions of Supervised Release

After determining Schrode's term of imprisonment, the court imposed a life term of supervised release. As part of his supervised release term, the court imposed four discretionary conditions, the relevant portions of which are included below:

> Condition 3: The defendant shall follow the instructions of the probation officer. He shall answer truthfully the questions of Probation as they relate to his conditions of supervision, subject to his right against self-incrimination.

> Condition 8: The defendant shall participate in a sex offender treatment program as deemed necessary by probation.

> Condition 13: [The defendant] shall, at the direction of the U.S. Probation Office, participate in a program for substance abuse treatment including not more than six tests per month to determine whether he has used controlled or psychoactive substances … . He shall be subject to this condition until such time as Probation determines that drug abuse treatment and drug testing no longer assist him to avoid committing further crimes.

> Condition 14: The defendant shall participate in psychiatric services and/or a program of mental

health counseling/treatment as directed by Probation … . He shall be subject to this condition until such time as Probation determines that mental health counseling/treatment no longer assists him to avoid committing further crimes.

## II. ANALYSIS

On appeal, Schrode argues that the district court erroneously applied U.S.S.G. § 5G1.3, violated 18 U.S.C. § 3583 when it did not consider the relevant factors under 18 U.S.C. § 3553(a) in deciding to impose a life term of supervised release, and improperly delegated Schrode's supervised release conditions to the probation office. We review each of his arguments in turn.

### A.  Judge Did Not Err in Application of U.S.S.G. §  5G1.3

We review de novo whether a district court properly determined the applicable provision of U.S.S.G. § 5G1.3. *United States v. Conley*, 777 F.3d 910, 913 (7th Cir. 2015). Relevant conduct determinations are factual determinations, which may only be reversed for clear error. *United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003).

U.S.S.G. § 5G1.3(b) reads in relevant part as follows:

(b) if … a[n undischarged] term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of (a)(1), (a)(2), or (a)(3) of 1B1.3, the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(d) directs that "in any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."

U.S.S.G. § 1B1.3(a)(1)(A) defines relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." Section 1B1.3(a)(2) applies to grouped offenses, and includes "all acts and omissions described in subdivisions (1)(A) and (1)(B) that were part of the same course of conduct or common scheme or plan as the offense of conviction." Section 1B1.3(a)(3) additionally defines relevant conduct as "all harm that resulted from acts and omissions specified in subsections (a)(1) and (a)(2) above; and all harm that was the object of such acts and omissions."

Schrode's argument is twofold: first, that the district court should have found his state offense to be relevant conduct for all of his federal offenses, and second, that the district court erred in applying both § 5G1.3(b) and (d) when determining

whether his state term of imprisonment would run concurrently or consecutively to his federal sentence.

### 1. No Clear Error in Relevant Conduct Findings

It is the defendant's burden to demonstrate that the conduct which led to his state sentences is relevant conduct to his federal offense. *United States v. Nania*, 724 F.3d 824, 833 (7th Cir. 2013). In *Nania*, we held that sufficient factual overlap must exist between the state and federal offenses for the state conduct to be considered relevant to the federal offense under § 5G1.3(b). *Id.* at 830. We also noted that § 5G1.3 is designed to discourage sentences that punish defendants twice for the same conduct. *Id.* at 829. Schrode advances two arguments in support of finding that the state offense counts as relevant conduct for the receipt and possession counts.

First, Schrode argues that under the grouping rules, his offense levels for the production counts (which he argues were partially informed by his state conduct) contributed to an increase in his combined adjusted offense level by two points. So, he argues, his state conduct was relevant to his sentencing calculation for possession and receipt of child pornography. But as Schrode himself points out, § 5G1.3(b) no longer includes a requirement that the conduct at issue be a basis for increasing a defendant's offense level. *United States v. Orozco-Sanchez*, 814 F.3d 844, 850 (7th Cir. 2016). The central analysis is now only whether or not the conduct underlying the state sentence meets the definition of "relevant conduct" under § 1B1.3. *Id.* And Schrode fails to explain why his possession and receipt counts, in a separate group from his production counts, meet that definition. We disagree that when an undischarged sentence indirectly affects the sentence for an instant offense by way of the grouping rules, but was not part of the

same course of conduct as the federal offense, we must consider the state offense to be relevant conduct to unrelated offenses under § 1B1.3.

Second, Schrode argues that his state court offense is relevant conduct to all of his federal offenses because his combined adjusted offense level for all four federal counts was subjected to an enhancement under § 4B1.5(b)(1), which adds five levels when the defendant's "instant offense is a covered sex crime … and the defendant engaged in a pattern of activity involving prohibited sexual conduct." But as the government points out, "pattern of activity" under § 4B1.5(b)(1) is met "if on at least two separate occasions, the defendant engaged in prohibited contact with a minor." App. Note 4(B)(i). Since Schrode met this requirement by engaging in the two production offenses that were the source of his federal sentence, it is far from clear that his state offense was considered part of the pattern. Moreover, a "pattern of activity" finding should not be equated with "relevant conduct" under § 1B1.3(b), which requires not just that the defendant committed certain types of offenses two times or more, but that the two offenses at issue were part of *the same* course of conduct. U.S.S.G. § 1B1.3(a)(2). Certainly the fact that a defendant commits a certain type of offense on multiple occasions does not inevitably mean that each separate offense is part of the same course of conduct.

Schrode needed to provide a factual basis for finding that his sexual abuse of Jane was part of the same course of conduct as his receipt and possession of child pornography of other victims, such that failing to discount his state sentence would subject him to double punishment for the same conduct. *See Nania*, 724 F.3d at 829. But Schrode's federal offenses

for receipt and possession of child pornography did not involve images or abuse of Jane and occurred almost a year before the conduct which led to Schrode's state conviction. It is clear from the record that the district court accepted (albeit reluctantly) that Schrode's state sentence resulted from conduct relevant to his production counts because the same victim was involved. By contrast, the same victim was not involved in the receipt and possession counts. The judge did not clearly err in finding that offenses that did not have any victims in common were not part of the same course of conduct, and therefore not relevant conduct under § 1B1.3(b). Schrode has not provided a persuasive reason to disturb this finding under clear error review.

### 2. No Error in Applying Two Subsections of U.S.S.G. § 5G1.3

Schrode also argues that the district court was not permitted to apply § 5G1.3(d) to his receipt and possession counts once it determined that § 5G1.3(b) applied to his production counts. In other words, the court was required to take an all-or-nothing approach with the separate counts once it determined that the state court sentence entailed relevant conduct for at least some of his federal offenses. We do not find this reasoning persuasive, for a few reasons.

We start by looking at § 5G1.3(b) itself. Application Note 2(b) notes that § 5G1.3(b) does *not* apply in cases where the prior offense was not relevant conduct to the "instant offense." U.S.S.G. § 5G1.3(b), App. Note 2(b). So if the judge explicitly found the state court sentence for Jane's rape was not relevant to the receipt and possession offenses, then it was barred from applying subsection (b). Next, we look at the Guidelines definition of "instant offense." U.S.S.G. § 1B1.1,

application note 1H. "Offense" means the offense of convic-
tion and all relevant conduct under 1B1.3, unless a different
meaning is specified or is otherwise clear from the context. *Id*.
"Instant" is used in connection with "offense" to distinguish
the violation for which the defendant is being sentenced from
a prior or subsequent offense or from an offense before an-
other court. *Id*.

This is a situation where the definition of "offense" must
be modified based on the context. "Offense" as it appears un-
der § 5G1.3 cannot mean the offense of conviction *plus* rele-
vant conduct, because the district court must separately de-
termine if conduct is relevant in order to apply the appropri-
ate subsection. So a better reading of "offense" in this context
is simply the offense of conviction. Because there are four of-
fenses of conviction that each resulted in a separate term of
imprisonment, it makes sense that each offense must be run
through § 5G1.3's analysis separately to determine how the
undischarged state sentence applies to the federal term of im-
prisonment. Otherwise, § 5G1.3(b)'s requirement that the rel-
evant conduct analysis apply to the "instant offense" would
not be met. Schrode argues that the § 5G1.3 requires every of-
fense of conviction to be subject to the same subsection, but
he does not provide any authority for this position. As a pol-
icy matter, to adopt his view would prevent courts from im-
posing a fair punishment on defendants for conduct wholly
apart from the conduct that led to a prior sentence, simply be-
cause they happened to be prosecuted for multiple unrelated
federal offenses at once. So we see no error in the district court
applying § 5G1.3(b) to the production counts, and § 5G1.3(d)
to the possession and receipt counts.

### 3. Adequate Reasons Provided for Imposing Consecutive Sentence for Counts 1 and 4

Finally, Schrode argues that the district court failed to apply Note 4(A) under § 5G1.3, which requires considering the § 3553(a) factors as well as other listed factors to achieve a reasonable incremental punishment. U.S.S.G. § 5G1.3, App. Note 4(A). We are not persuaded. The district court noted the amount of time already served on Schrode's state sentence, the need to protect the public, the differences between the state offense and the federal offenses, the seriousness of Schrode's federal offenses, the continuation of Schrode's unlawful behavior after he was contacted by the FBI, and the need to deter future offenses. All of these factors led the court to believe that imposing a sentence which significantly added to Schrode's state sentence was an appropriate punishment. The court more than adequately stated its reasons for applying some portions of his federal sentence consecutively to his state sentence.

### B. District Court Complied with 18 U.S.C. § 3583(c)

Schrode next attacks his lifetime term of supervision. He argues that the district court violated 18 U.S.C. § 3583(c), which requires that a district court determine the length of a supervised release term based on several factors listed under § 3553(a). *United States v. Thompson*, 777 F.3d 368, 375 (7th Cir. 2015). We review whether a district court adequately explained a chosen sentence de novo. *United States v. Armour*, 804 F.3d 859, 867 (7th Cir. 2015). Supervised release is considered part of a given sentence for purposes of our review. *Thompson*, 777 F.3d at 373.

Schrode urges us to overrule our precedent that "a district court need only provide one overarching explanation and justification—tethered, of course, to the § 3553(a) factors—for why it thinks a criminal sentence comprised of both terms of imprisonment and supervised release is appropriate." *United States v. Bloch*, 825 F.3d 862, 870 (7th Cir. 2016); *see also United States v. Kappes*, 782 F.3d 828, 847 (7th Cir. 2015); *Armour*, 804 F.3d at 867–68. We decline to do so. The district court provided a number of reasons for imposing its sentence, which encompassed both Schrode's prison term and term of supervised release. The judge stated on the record that she took all of the relevant § 3553(a) factors into consideration. She acknowledged Schrode's lack of criminal history, his cooperation in the case, his difficult childhood, and his low intellectual capacity. She stated that the sentence would help Schrode transition back into society, ensure he did not resume illegal activities, protect the public, create deterrence for similar offenses, and provide Schrode with ongoing treatment and support. These reasons were distinct from the judge's consideration of the need for just punishment, which is only appropriate to consider in determining a term of imprisonment. 18 U.S.C. § 3583(c) (excluding from consideration factors under § 3553(a)(2)(A)); *Kappes*, 782 F.3d at 836. The district court should be commended for providing its reasons for each condition of supervised release, and asking Schrode's counsel both at the outset of the hearing and after its pronouncement of the conditions if it had addressed all relevant issues to Schrode's satisfaction.

Schrode argues that reviewing the sentence as a whole instead of requiring a district court to articulate separate reasons for a prison term and term of supervised release renders 18 U.S.C. § 3583(c) redundant to 18 U.S.C. § 3553(a). But "no

part of § 3553(c) requires the district court to bifurcate its consideration, discussion, and evaluation of the § 3553(a) sentencing factors, which also happens to include all the factors a district court must consider in imposing a term of supervised release." *Bloch*, 825 F.3d at 869. The complementary purposes of imprisonment and supervised release require a court to consider many § 3553(a) factors for both, and this requirement is codified by § 3583(c). This does not cause redundancy, but rather ensures that all components of a defendant's sentence account for the individual characteristics of his case.

### C. Non-Delegation Challenge to Supervised Release Conditions Waived

Schrode next argues that several of his conditions of supervised release violated the non-delegation clause of the Constitution. Specifically, he points to four conditions which authorized varying levels of discretion by the U.S. Probation Office. We review constitutional challenges to sentences de novo, *United States v. Tichenor*, 683 F.3d 358, 362 (7th Cir. 2012), but we review arguments that were forfeited before the district court for plain error, *United States v. Hudson*, 627 F.3d 309, 312 (7th Cir. 2010). In contrast to forfeited issues, valid waiver of an issue forecloses any review because there is no error to correct on appeal. *See United States v. Webster*, 775 F.3d 897, 902 (7th Cir. 2015).

Article III judges lack constitutional authority to delegate judicial power to non-Article III judges. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (2015). So Article III of the Constitution would prevent a judge from delegating the duty of imposing a defendant's punishment to a probation officer. *See, e.g.*, *United States v. Nash*, 483 F.3d 1302, 1306 (11th Cir. 2006)

(plain error to impose condition that defendant "shall" partic-ipate in mental health counseling "as deemed necessary" by probation officer because condition would turn on judgment of officer, not court); *United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005) (plain error to impose condition that "defendant shall participate" in a mental health treatment program "at the discretion of the probation officer"). In addition, "a plainly erroneous condition of supervised release will inevi-tably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration. *Pruden*, 398 F.3d at 251. While we have not squarely confronted the constitutional underpinnings of this principle in the sentenc-ing context, we have held that the delegation of a serious sen-tencing decision from "a judicial officer to another deprives the defendant of a substantial right." *United States v. Moham-mad*, 53 F.3d 1426, 1439 (7th Cir. 1995). Notwithstanding these rules, probation officers have broad authority to manage and supervise probationers. *United States v. Mike*, 632 F.3d 686, 695 (10th Cir. 2011). To determine if a condition of supervised re-lease violates the non-delegation rule, courts addressing the question have distinguished between those delegations that "merely task the probation officer with performing ministe-rial acts or support services related to the punishment im-posed, and those that allow the officer to decide the nature or extent of the defendant's punishment." *Id*.

On appeal, Schrode challenges the conditions of super-vised release which (1) mandated that he follow the instruc-tions of the probation officer; (2) required him to participate in a sex offender treatment program as deemed necessary by probation; (3) stated that he must participate in a substance abuse program at the direction of the probation office until it determined that drug abuse treatment and testing no longer

helped him to avoid committing further crimes; and (4) dictated he must participate in various mental health treatments as directed by probation until it determined that such treatment no longer helped him to avoid committing further crimes. He argues each of these conditions improperly delegated judicial power to determine his sentence to a law enforcement agency in violation of Article III.

The government responds that Schrode waived this issue at the sentencing hearing by affirmatively stating that he had no objections to the conditions he now challenges on constitutional grounds. In the context of supervised release, a defendant's response to a general inquiry at the end of sentencing, unaccompanied by either (1) an explicit approval of the condition or (2) a strategic reason to forgo the argument at the hearing, does not constitute waiver. *United States v. Hinds*, 770 F.3d 658, 665 (7th Cir. 2014). When a defendant affirmatively states "I do not object" or "I withdraw my objection" to a specific issue, waiver applies. *Webster*, 775 F.3d at 902 (citing *United States v. Locke*, 759 F.3d 760, 763 (7th Cir. 2014)); *cf. United States v. Farmer*, 755 F.3d 849, 853 (7th Cir. 2014) (finding no waiver in part because defendant did not affirmatively say "no objection" to condition of supervised release challenged on appeal).

We agree with the government that waiver applies here. The district court explicitly asked Schrode's counsel at his sentencing hearing if he was withdrawing his objections to each of the conditions of supervised release he now challenges, identifying them individually by their paragraph number in the presentence report. He confirmed his withdrawal of objections to all of the conditions he now challenges, contingent on the court's acceptance of conditions that were agreed to by

the parties. He also maintained his objection to other conditions, which are not the subject of this appeal.

Schrode's attempt to analogize the situation to the defendants' sentences in *Thompson*, 777 F.3d at 368, is misplaced. In those sentences, there was no affirmative withdrawal of objections. Moreover, the presentence report made no recommendation for supervised release, and the district court failed to provide any explanation for why it imposed each condition. *Id.* at 375, 380. By contrast, here all four conditions were submitted to Schrode prior to the sentencing hearing, with reasons set forth for each condition in the presentence report. At the hearing itself, the district court articulated clear reasons, tethered to the factors listed under § 3553(a) and consistent with § 3583(d), for each condition that Schrode now constitutionally challenges for the first time on appeal. The salient circumstances in *Thompson*, that the defendants lacked sufficient notice or explanation by the district court to register objections to the conditions at the hearing, do not apply here. *See also United States v. Lewis*, 823 F.3d 1075, 1082 (7th Cir. 2016) (finding waiver where "[t]here were no surprises in the sentencing hearing related to supervised release" and the defendant did not object).

Also, the conditions were not so vague that Schrode could not determine what restrictions were actually being imposed and whether or not any of them were so onerous that he should object. *Cf. United States v. Hill*, 818 F.3d 342, 345 (7th Cir. 2016). The issue he now raises is quite clear. The district court should not have given the probation officer so much power in determining whether or not the challenged conditions should apply. He cannot refashion the withdrawal of his objections as forfeiture, and not waiver, when he had ample

notice of the conditions to be imposed, a clear understanding of the meaning of each condition, multiple opportunities to object, was explicitly asked by the court whether he chose to withdraw his objections or preserve them, and chose to preserve some objections and withdraw the ones he now appeals.

However, we note that we find particularly troubling the imposition of a condition of sex offender treatment "as deemed necessary by probation," which unlike the other conditions, delegates to the probation office not merely the administration of an imposed condition, but the underlying judgment of whether the condition will be imposed at all. Unfortunately, Schrode's affirmative withdrawal of any objection to the condition forecloses our review of this issue. *Webster*, 775 F.3d at 902.

### D. Limited Remand for Calculation Error

Finally, we address a calculation error. The maximum sentence for production offenses under 18 U.S.C. § 2251(e) is 360 months. The district court, in what appears to have been an inadvertent error, applied Schrode's state court sentence to an aggregate sentence of 663 months for the production offenses. We remand only this issue to the district court to ensure compliance with § 2251(e).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Schrode's sentence, with the exception of a limited remand consistent with Section II.D of this opinion.