In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3265

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC D. WAGNER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:14-cr-10013-JES-JEH-1 — **James E. Shadid**, *Chief Judge*.

ARGUED SEPTEMBER 19, 2016 — DECIDED SEPTEMBER 25, 2017

Before POSNER,* WILLIAMS, and SYKES, *Circuit Judges*.

---

* Circuit Judge Posner retired on September 2, 2017, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

WILLIAMS, *Circuit Judge*. Eric D. Wagner was convicted of knowingly attempting to persuade or induce a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). He was sentenced to 132 months' imprisonment followed by a 12-year term of supervised release based on a guidelines range that incorporated uncharged conduct under U.S.S.G. § 2G1.3(d)(1). Though Wagner did not object to inclusion of uncharged conduct at sentencing, he now contends that its inclusion was an improper application of the grouping enhancement. We disagree. The uncharged conduct meets the guidelines' definition of relevant conduct and was properly included pursuant to § 2G1.3(d)(1).

Wagner also argues that the district court erred in imposing three special conditions of supervised release. First, he contends that the district court provided insufficient reasoning for imposing the condition requiring his participation in computer monitoring. However, the district court reviewed the relevant factors and found the condition was necessary to insure compliance with other conditions. Next, Wagner maintains that the district court improperly banned his access to adult pornography. While we do not agree that the special condition creates such a ban, we vacate the condition as an improper delegation of the district court's authority to determine the nature of the defendant's punishment. Finally, Wagner asserts that the district court improperly banned his internet access to adult pornography. Although we disagree with Wagner's reasoning, we vacate and remand this condition because it is poorly written and unclear.

## I. BACKGROUND

### A. Wagner's Uncharged Conduct

On November 4, 2013, Eric D. Wagner responded to an internet advertisement posted by Holly, whom Wagner believed to be an 18-year-old woman. However, "Holly" was actually an undercover federal officer. Holly's advertisement stated "looking for help in getting things I need. I am good 2 hang out with and nice if u r to [*sic*]. We can talk about anything u want. I am probably younger than most of you but its [*sic*] okay with me if its [*sic*] okay with you." Wagner's response, which included a picture of himself, stated "hello im [*sic*] Eric, 39, looking for younger women to hang out and see if we click, I don't look at age I look at the person, tell what your [*sic*] looking for and lets [*sic*] see if we can get together?"

Holly replied and informed Wagner that she was only 14 and trying to earn $300. Unaffected by this new information, Wagner told Holly he wanted to meet her and stated he was "clean and unable to get [her] pregnant." The two arranged to meet at a Casey's General Store in Peoria, Illinois on November 9, 2013. After Holly failed to show for the November 9 rendezvous, Wagner messaged her every day until November 19, 2013. He offered to pay Holly's rent and promised that she would not be "disappointed." Wagner sent a final message on January 21, 2014 asking Holly to join him in "boating, drinking, tubin, havin fun." Wagner was not charged with any crime based on this conduct.

### B. Wagner's Charged Conduct

On January 13, 2014, Wagner responded to a Craigslist advertisement by Jen, which stated that she was 18-years-old, home alone, and looking "for sometin [sic] to do that's fun and

exciting." Wagner's response stated he was looking for "young girls" and did not care "how old the girls are as long as they can keep it a secret and that anything goes." When Jen informed Wagner she was only 15 years old, he replied that he did not want to go to jail, but still wanted to meet Jen. Over the next two weeks Wagner and Jen exchanged three telephone calls, thirteen emails, and four-hundred-and-seventy text messages. In these communications, Wagner emphasized the importance of keeping their relationship secret, described performing sexual acts, proposed locations to meet and suggested Jen "get[] a fake ID," saying she sounded like she was 18 or 19 years old.

Wagner and Jen planned a meeting on January 28, 2014 at a Casey's General Store in Bellevue, Illinois. But, when Wagner arrived for the rendezvous, he was arrested by authorities since "Jen" was actually an undercover federal agent. Agents discovered condoms and bed sheets in Wagner's truck and internet searches for "Girls First Time Having Sex" and "Lose Your Virginity Without Pain" on his computer. Following a grand jury indictment, Wagner was convicted of knowingly attempting to persuade or induce a minor ("Jen") to engage in illegal sexual activity, in violation of 18 U.S.C. § 2442(b).

### C. Sentencing

Before the sentencing hearing, the Probation Officer submitted the presentence investigation report ("PSR") and calculated Wagner's base offense level as 32, which included two additional offense levels pursuant to U.S.S.G. § 2G1.3(d)(1) (sentencing enhancement instructing courts to treat each victim of offense as a separate count of conviction in grouping multiple counts). The report explained that the offense involved two minors—"Jen" and "Holly"— creating two

groups from Wagner's single conviction: Group 1 included Wagner's conduct of conviction, and Group 2 included Wagner's uncharged conduct relating to Holly. Based on this calculation, Wagner's guidelines range was 121 to 151 months' imprisonment. The district court adopted the PSR's sentencing recommendation and sentenced Wagner to 132 months' imprisonment, imposing a 12-year term of supervised release, which included six special conditions. Wagner did not object to the PSR or to any of the supervised release conditions.

On appeal, Wagner contends that the district court erroneously included his uncharged conduct in calculating his base offense level. He also objects to three special conditions of supervised release: Condition 1, Condition 3, and Condition 6. Condition 1 mandates Wagner's participation in Probation's Computer and Internet Monitoring Program ("CIMP") during his term of supervision, requires Wagner to install filtering software on any computer he possesses or uses to "monitor access to websites that depict sexually explicit conduct [,]" and requires Wagner to allow the Probation Office "unannounced access to any computer [he] possesses or uses to verify that the filtering software is functional." Condition 3 states, "[y]ou shall not knowingly receive, transmit, have under your control, or view, any child pornography that depicts sexually explicit conduct … unless the sex offender treatment provider determines that access to adult pornography should also be restricted or denied." Finally, Condition 6 forbids Wagner from "knowingly us[ing] the Internet or visit[ing] any website, including chat rooms or bulletin boards, to view material depicting child pornography or sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and (B) unless the sex offender treatment provider directs otherwise."

## II. ANALYSIS

Because Wagner failed to object below, we review the district court's calculation of the guidelines range and its imposition of the special conditions of supervised release for plain error. *See United States v. Goodwin*, 717 F.3d 511, 518 (7th Cir. 2013); *United States v. Ross*, 475 F.3d 871, 873 (7th Cir. 2007). To prevail on plain error review, Wagner must show: (1) an error, (2) that is clear, (3) that affected his substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010).

### A. District Court Correctly Calculated Wagner's Guidelines Range

When calculating the guidelines range, we generally disallow the inclusion of uncharged offenses to raise the offense level in U.S.S.G. § 3D1.1, the multiple-count grouping provision. *United States v. Newsom*, 402 F.3d 780, 784 (7th Cir. 2005) (citing *United States v. Dawson*, 1 F.3d 457, 463 (7th Cir. 1993)). Relying solely on *Newsom*, Wagner contends that the district court plainly erred by including his uncharged conduct in the multiple-count grouping provision to increase his offense level. But Wagner was sentenced pursuant to U.S.S.G. § 2G1.3(d)(1), where the Sentencing Commission clearly created an exception to the general rule.

Where an "offense" involves more than one minor, § 2G1.3(d)(1) instructs a sentencing court to apply § 3D1.1 "as if the [prohibited] conduct of each victim had been contained in a separate count of conviction." We refuse Wagner's invitation to interpret "offense" here as being limited to only the offense of conviction. Such interpretation is contrary to the

plain language and intent of the guidelines. The guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 … unless a different meaning is specified or is otherwise clear from the context." *See United States v. Hill*, 645 F.3d 900, 907–08 (7th Cir. 2011) (we interpret guidelines by first looking to the plain meaning of the words in the relevant provision). And, rather than specify a different meaning, the commentary for § 2G1.3(d)(1) explicitly requires that "relevant conduct of an offense of conviction …, *whether specifically cited in the count of conviction*, … shall be treated as if contained in a separate count of conviction." (emphasis added). *See United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (Commentary is given "controlling weight unless it is plainly erroneous or inconsistent with the text of the guideline it interprets.") (citation and quotation marks omitted).

Under § 1B1.3(a)(1)(A), relevant conduct includes "all acts and omissions committed … by the defendant … that occurred during the commission of the offense of conviction." We have said that the conduct must bear some relation to the offense of conviction, *United States v. Nance*, 611 F.3d 409, 416 (7th Cir. 2010), and must be criminal in nature. *United States v. Schaefer*, 291 F.3d 932, 939–40 (7th Cir. 2002). *See e.g. Nance*, 611 F.3d at 416 (upholding finding that child pornography possessed contemporaneously with offense conduct—receipt of child pornography—was relevant conduct supporting sentencing enhancement); *United States v. Ellison*, 113 F.3d 77 (7th Cir. 1997) (same).

Wagner maintains that his January 21 text to Holly is not criminal in nature, but is instead an innocent invitation to join him in "boating, drinking, tubin, having fun." This assertion rests on the premise that his original communication with

Holly ended November 19 such that any further communication should be reviewed in isolation. But to view his January 21 text in isolation is absurd. The message was not sent to a stranger or intended to be read out of context from his earlier communications. Rather, it was a continuation of Wagner's earlier attempts to meet with and engage in sexual activity with who he believed to be a 14-year-old girl. And we are not persuaded by Wagner's argument that a short pause in communication wipes the slate clean. We will not turn a blind-eye to the context of his communication to transform clearly devious conduct into an innocent act.

Viewed in context, Wagner's uncharged conduct is clearly criminal in nature and bears relation to his charged conduct. Wagner's uncharged conduct is almost identical to and violates the same statute as his charged conduct, demonstrating his proclivity towards sexually exploiting minor girls. In both his charged and uncharged conduct, Wagner responded to an internet advertisement, stated he was looking for a younger woman to hang out with and did not care about age, continued to pursue a sexual relationship after learning each girl was a minor, informed each girl that he was "clean and unable to get [her] pregnant," and attempted to arrange a meeting at a Casey's General Store.

Finally, the uncharged conduct, which occurred from November 3, 2013 to January 28, 2014, clearly occurred during the commission of the offense of conviction, which occurred from January 13 to January 28, 2014. Therefore, the district court did not err in including Wagner's uncharged conduct to conclude that his offense involved more than one minor and following the guidelines' mandate that each victim be treated as a separate count of conviction.

### B. Special Conditions of Supervised Release

Supervised release, known as "the decompression stage between prison and full release," is an important part of a federal criminal sentence. *United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015) (citation and quotation marks omitted). It serves complementary goals of protecting the public and rehabilitating an offender, and so requires flexibility. *United States v. Lewis*, 823 F.3d 1075, 1080 (7th Cir. 2016). This flexibility shapes our plain error review by making it harder to show plain error that must be immediately corrected. *Id*. at 1081; *see also United states v. Neal*, 810 F.3d 512, 520 (7th Cir. 2016).

### 1. District court sufficiently justified participation in CIMP

The first special condition of supervised release requires Wagner to participate in Computer and Internet Monitoring Program ("CIMP"), which involves installation of filtering software on any computer he possesses or uses to monitor access to websites depicting sexually explicit conduct. Wagner argues that the district court provided an insufficient explanation for imposing the special condition. *See Kappes*, 782 F.3d at 839 (district court must provide justification of condition "by an adequate statement of reasons, reasonably related to the applicable § 3353(a) factors"). This argument fails. At the sentencing hearing, the district court reviewed the relevant factors and indicated that it was imposing the condition because Wagner used a computer to facilitate his offense and he tried to hide his activities. The district court found this condition was necessary to allow the Probation Office to track Wagner's online activities and to insure compliance with other

conditions. This satisfies the explanation and consideration requirements of § 3353(a).

At oral argument, Wagner argued that this special condition is also unreasonable as it allows a probation officer unfettered access to his computers, meaning the officer could demand access at all hours of the night. But, as we have said before, we must fairly presume Wagner's probation officer will apply this condition in a reasonable manner. *Kappes*, 782 F.3d at 857. "And if a particular probation officer exercises his or her discretion in an unreasonable manner, this exercise will be subject to review by the district court." *Id*. at 857–58. Therefore, the district court did not err in imposing the first special condition of supervised release.

### 2. Third special condition improperly delegates Article III authority

The third special condition of supervised release states: "you shall not knowingly receive, transmit, have under your control, or view any child pornography … unless the sex offender treatment provider determines that access to adult pornography should also be restricted or denied."[1] Wagner contends that this is an improper ban on his access to adult pornography, as there is no evidence: (1) establishing a connection between his viewing lawful adult pornography and engaging in unlawful sexual activity with minor females; or

---

[1] We begin by noting that this condition, as written, makes no sense. The use of the term "unless" appears to give Wagner permission to possess child pornography if the treatment provider bans adult pornography. Clearly this is not what the district court intended.

(2) that viewing legal adult pornography would reinforce his previous behavior.[2]

Conditions of supervised release must be appropriately tailored to the defendant's offense, personal history and characteristics, and involve no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release. *Kappes*, 782 F.3d 847. Because adult pornography, unlike child pornography, enjoys First Amendment protection, a ban on its access is only appropriate where it is reasonably necessary to assist the defendant's rehabilitation or to protect the public. *See United States v. Taylor*, 796 F.3d 788, 793 (7th Cir. 2015) (no evidence suggesting possession of legal adult pornography contributed to illegal trafficking of child pornography).

The government agrees that an outright ban on Wagner's access to adult pornography is inappropriate. But the government does not read this condition as such a ban. It interprets the condition as a conditional restriction, imposing a ban only after an expert determines it is necessary. We agree with the government's interpretation that this condition is not yet a ban. Instead, the condition delegates the determination of whether a ban will be imposed to a sex offender treatment provider ("treatment provider"). But, Article III judges lack constitutional authority to delegate the duty of imposing a de-

---

[2] The government cites *United States v. Rhodes*, 552 F.3d 624 (7th Cir. 2009), to assert that this condition is not ripe for review. We are unpersuaded by this argument because, unlike in *Rhodes*, this condition is not subject to a string of contingencies. *See id.* at 628. The only requirement for the ban to be imposed is simply a determination by a treatment provider.

fendant's punishment to a non-Article III judge, such as a probation officer or treatment provider. *United States v. Schrode*, 839 F.3d 545, 554 (7th Cir. 2016); *see also United States v. Scott*, 316 F.3d 733, 736 (7th Cir. 2003) ("Terms should be established by judges *ex ante*, not by probation officers acting under broad delegations … .").

In determining whether a condition of supervised release violates the non-delegation rule, we distinguish between permissible conditions that "merely task the probation officer with performing ministerial acts or support services related to the punishment imposed" and impermissible delegations "that allow the officer to decide the nature or extent of the defendant's punishment." *Schrode*, 839 F.3d at 555 (citation and quotation marks omitted); *see also United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005); *United States v. Stephens*, 424 F.3d 876, 880–81 (9th Cir. 2005). So, a condition requiring a defendant to attend treatment "as approved by the probation officer" poses no problem because the court itself ordered participation in the program and only provides the probation officer authority to manage the details and supervision of the program. *See United States v. Cutler*, 259 F. App'x 883, 887 (7th Cir. 2008); *United States v. Burris*, 88 F. App'x 130, 132 (7th Cir. 2004). But imposition of treatment "as deemed necessary by probation," is particularly troubling and can be viewed as a delegation of the underlying judgment of *whether* the condition will be imposed at all. *See Schrode*, 839 F.3d at 556.

Here, the district court did not impose a ban on Wagner's access to adult pornography itself because, based on the evidence it had, it could not. Instead, it delegated the decision of *whether* "adult pornography should [ ] be restricted or de-

nied" to a treatment provider. This is an impermissible delegation of the district court's Article III authority to determine the nature of Wagner's punishment. So, the portion of the condition stating "unless the sex offender treatment provider determines that access to adult pornography should also be restricted or denied" must be stricken. Instead, because modifications to the conditions may be made "at any time prior to the expiration or termination of the [supervised release] term[,]" the district court may invite the treatment provider and Probation Office at a later time to present the necessary evidence and recommend such restrictions. 18 U.S.C. § 3583(d). *See e.g., United States v. Siegel*, 753 F.3d 705, 717 (7th Cir. 2014) (the eve of release from prison presents "a proper occasion for the judge to consider whether to modify one or more of the conditions in light of any changed circumstances brought about by the defendant's experiences in prison."). Then, after conducting the appropriate analysis, the district court can properly exercise its authority to determine whether such punishment is necessary to serve the principles and goals of supervised release. We vacate and remand this condition for reassessment.

### 3. Special condition regarding internet access pornography is vague

The sixth special condition of supervised release reads: "You shall not knowingly use the internet or visit any website, including chat rooms or bulletin boards, to view material depicting child pornography or sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and (B) unless the sex offender treatment provider directs otherwise." Wagner challenges this condition as impermissibly banning his access to adult

pornography via the internet. But we have upheld such conditions where the district court provides proper justification, as "an offender on supervised release has no unmitigated First Amendment right to view adult pornography *on the internet*, particularly when he is permitted to view it through other mediums like television or in magazines." *United States v. Cary*, 775 F.3d 919, 926 (7th Cir. 2015). And, here, the district court provided sufficient justification for such a restriction. Importantly, Wagner's offense conduct stemmed from his use of the internet to search for, find, and communicate with both Holly and Jen.

Instead, we are concerned with the poor wording of this condition. Conditions of supervised release must be "sufficiently specific to place the defendant on notice of what is expected." *Kappes*, 782 F.3d at 847. And we have previously instructed district courts to word special conditions carefully and simply. *Id*. at 848. Here, however, the condition appears to give the treatment provider discretion to permit Wagner to view material depicting child pornography. Obviously such an absurd result was clearly not intended by the district court. To the extent the district court intended to provide the treatment provider discretion to permit Wagner to use the internet to view adult pornography, we caution that this resembles an impermissible delegation of the extent of Wagner's punishment. Therefore, the language "unless the sex offender treatment provider directs otherwise" should be stricken. We vacate and remand this condition for reassessment.

### C. Wagner Has Not Forfeited or Waived a Future § 2255 Claim

Finally, Wagner asks us to clarify that he has not forfeited or waived his ability to bring a proper 28 U.S.C. § 2255 motion

following his direct appeal. On September 27, 2015, prior to his sentencing, Wagner filed a "Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255." The district court properly dismissed the motion as nonjusticiable, as Wagner was not yet "a prisoner in custody under sentence of a court[.]" 28 U.S.C. § 2255(a). We find, and the government concedes, that Wagner's September 27 motion does not constitute waiver or forfeiture of his ability to bring a proper § 2255 motion.

### III. CONCLUSION

In sum: (a) the district court's calculation of the guidelines range is AFFIRMED; (b) special condition 1 is AFFIRMED; (c) special condition 3 is VACATED; and (d) special condition 6 is VACATED and REMANDED to the district court. Accordingly, the judgment of the district court is AFFIRMED IN PART and VACATED IN PART and this case is REMANDED to the district court for proceedings consistent with this opinion.