In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-3249

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VALERIE FLORES,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:18-cr-00039-wmc-2 — **William M. Conley**, *Judge.*

———————————

ARGUED MAY 22, 2019— DECIDED JULY 3, 2019

———————————

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge*. In this appeal, Valerie Flores challenges one condition of her supervised release as unconstitutionally vague. She admits that she did not raise the challenge in the district court, but she asks that we review it for plain error. The first step in plain-error review, as the Supreme Court has repeatedly said, is to ask whether the defendant intentionally relinquished the challenge she now presents. *See Rosales-Mireles v. United States,* 138 S. Ct. 1897,

1904–05 (2018); *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); *United States v. Olano*, 507 U.S. 725, 733 (1993). This is where Flores's challenge fails. She had notice and opportunity to make the challenge in the district court, she submitted other sentencing challenges, and she affirmatively waived reading of the conditions and their justifications at sentencing. Her failure amounts to waiver, precluding appellate review.

We recognize, and will address, that in some cases we have overlooked waiver concerns when reviewing supervised release conditions for plain error. Those cases either presented compelling reasons for forgiving waiver, which this case does not present, or simply did not address waiver, usually because the government did not press it. We emphasize, as the Supreme Court has, that waiver is a threshold, context-specific inquiry in plain-error review. Due to Flores's waiver, we affirm.

I

In January 2018, Wisconsin law enforcement learned via confidential informants that Flores and her co-defendant had traveled to California to obtain methamphetamine and transport it back to Wisconsin to sell. Through her cell phone, the officers tracked Flores and her co-defendant, who were driving separate vehicles in tandem. Police conducted traffic stops after the co-defendants returned to Wisconsin. Searches of their vehicles revealed more than 300 pounds of marijuana with a street value of approximately $1.8 million.

A grand jury returned an indictment charging Flores with possession with the intent to distribute 100 kilograms or more of marijuana under 21 U.S.C. § 841(a)(1). Because

Flores had a prior state court conviction for a felony drug offense, and was on supervision for that offense at the time of her arrest, the government filed an information under 21 U.S.C. § 851 for enhanced penalties. Flores faced a mandatory minimum sentence of ten years and a supervised release term of eight years. *See* 21 U.S.C. § 841(b)(1)(B)(vii).

In July 2018, Flores pleaded guilty. Using the 2016 United States Sentencing Guidelines Manual, the United States Probation Office prepared Flores's Presentence Investigation Report, Revised Presentence Investigation Report, and addendum to the report (collectively "PSR").

Attached to the PSR was the supervision plan listing the standard and special conditions of supervised release. At issue on appeal is standard condition #3 (employment condition), which stated: "Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation officer or the Court." In Flores's supervision plan, the probation office noted that "defendant's employment has been sporadic and inconsistent," and also "[s]he has outstanding financial obligations." The probation office's justification for the employment condition stated, in part, "[e]vidence based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant."

Flores had the opportunity to object to the PSR and discuss sentencing issues in writing before sentencing. In September 2018, she filed objections, corrections, and clarifications to the PSR. She did not, however, object to any of the proposed conditions of supervised release. A couple weeks

later, she filed a sentencing memorandum seeking the mandatory minimum sentence to run concurrently with her state sentence. Again, Flores did not object to any of the proposed conditions of supervised release.

The district court conducted Flores's sentencing hearing in October 2018. At the beginning of the hearing, the court asked Flores if she had the opportunity to read and discuss her original PSR, the revised PSR, and the addendum to the report with her attorney. Flores responded yes. Next, the sentencing court noted that the government had no objections to the PSR, but that Flores objected to the two-level increase under U.S.S.G. § 2D1.1(b)(1) based on maintaining a premise for manufacturing or distributing a controlled substance. The court also discussed Flores's objection to relevant conduct explaining that the amounts were not included in the drug quantity analysis, and therefore, had no impact under the sentencing guidelines.

Before imposing her sentence, the district judge asked Flores if there was anything she would like to add. Flores had prepared a written allocution, which she read into the record. She emphasized:

> I want to use this time serving my sentence for some major self-improvement and to acquire skills and a college degree that will serve me well when I get home. Whatever the outcome of today ends up being, I will take every advantage and opportunity possible to help with my sobriety and restart my life with a positive perception on how things should be done rightfully.

After her allocution, the district court sentenced Flores to the mandatory minimum of 120 months in prison. The court

recommended mental health treatment, drug abuse pro-grams, and, consistent with Flores's allocution, educational and vocational training. Also, the court directed that Flores's 120 month federal sentence run concurrently with the bal-ance of her state revocation sentence.

The district court further sentenced Flores to the manda-tory eight years of supervised release adopting certain con-ditions set forth in the supervision plan, including the em-ployment condition. The court first noted that neither the government nor Flores had objected to these conditions. The court then stated:

> [T]he primary goals of supervised release are to assist the defendant's transition back into the community after a term of imprisonment and to provide rehabilitation. That will be crucial to this defendant. Supervision in this case will provide the typical needed programming, including rehabilita-tive programs, assist with community reintegra-tion, and afford supervision necessary to deter and protect against further criminal acts perpetrated by the defendant.
>
> …
>
> I'm confident that along with her sporadic em-ployment and outstanding financial obligations that I have more than amply justified the conditions that are being imposed. But as counsel is aware, there's some question as to whether I should put each on the record verbatim and justify them indi-vidually. And I'm happy to do that unless the de-fense wishes to waive my doing so.

Defense counsel responded: "We do waive, Your Honor. Thank you."

The court continued "when the defendant is released from confinement, understanding that will be ten years from now or thereabouts, [if] either the defendant or the supervising probation officer should believe that any of the conditions imposed today are no longer appropriate, they should petition the Court for review."

The district court entered judgment on October 9, 2018, and Flores filed a timely notice of appeal.

## II

On appeal, Flores argues that the supervised release condition requiring her to "maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment" is unconstitutionally vague. Flores specifically takes issue with the word "suitable."

## A

We begin with the difference between forfeiture and waiver. Waiver occurs when a party intentionally relinquishes a known right and forfeiture arises when a party inadvertently fails to raise an argument in the district court. *Olano*, 507 U.S. at 733; *United States v. Waldrip*, 859 F.3d 446, 450 (7th Cir. 2017). We review forfeited arguments for plain error, whereas waiver extinguishes error and precludes appellate review. *Olano*, 507 U.S. at 733. Waiver and forfeiture are related, but distinct, concepts, although at times we have confused the terms. *Waldrip*, 859 F.3d at 450; *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001).

Because Flores did not object to the challenged supervised release condition in the district court, the parties assert that we should review her argument for plain error. We dis-

agree. For plain-error review to apply, "there must be an error that has not been intentionally relinquished or abandoned." *Molina-Martinez*, 136 S. Ct. at 1343 (citing *Olano*, 507 U.S. at 732-33); *see also Rosales-Mireles*, 138 S. Ct. at 1904-05; *United States v. Young*, 908 F.3d 241, 246 (7th Cir. 2018). Applying well-known principles, the record makes clear that Flores waived her appellate challenge to the employment condition.

In general, criminal defendants must make informed and intentional decisions when waiving their rights. *New York v. Hill*, 528 U.S. 110, 114 (2000); *Olano*, 507 U.S. at 733. Even "[t]he most basic rights of criminal defendants are … subject to waiver[,]" *Peretz v. United States*, 501 U.S. 923, 936 (1991), but "[w]hat suffices for waiver depends on the nature of the right at issue." *Hill*, 528 U.S. at 114. "For certain fundamental rights, the defendant must personally make an informed waiver," but for other rights, "waiver may be affected by action of counsel." *Id.*; *see also United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007). Our waiver inquiry, therefore, varies depending on the right at issue and the circumstances of the case.

In the context of a guilty plea, for example, because the defendant is waiving several fundamental rights, her waiver must clear a high bar. *United States v. Brady*, 397 U.S. 742, 748 (1970). When accepting a guilty plea, the district judge must "conduct a long, searching colloquy" to ensure that the defendant properly waived her constitutional rights. *United States v. Harden*, 758 F.3d 886, 888 (7th Cir. 2014); *see also* Fed. R. Crim. P. 11(b). Similarly, a defendant's waiver of her Sixth Amendment right to assistance of counsel must not only be knowing and intelligent, but also unequivocal. *Iowa v. Tovar*,

541 U.S. 77, 88 (2004); *Faretta v. California*, 422 U.S. 806, 835 (1975). There, too, the district court must directly engage with the defendant to confirm that her waiver was knowing and intelligent.

Not every waiver must meet such stringent criteria. A defendant waives her right to challenge jury instructions if she approved of the instructions at the district court. *United States v. Caguana*, 884 F.3d 681, 689 (7th Cir. 2018); *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996). "We do not require the defendant personally to waive objection, nor is the district court required to address the waiver question directly to the defendant." *Griffin*, 84 F.3d at 924.

Waiver of most sentencing issues is similar. *See United States v. St. Clair*, --- F.3d ----, 2019 WL 2399597, at *2 (7th Cir. June 7, 2019). We have observed that there is no rigid rule for finding waiver in this context. *United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015). Instead, we address each omission in light of the surrounding circumstances to determine whether the defendant's decision not to object was knowing and intentional. *Id.*; *United States v. Garcia*, 580 F.3d 528, 542 (7th Cir. 2009).

We often find such intent where the defendant chose—as a matter of strategy—not to present a conditions-related argument to the district court. *See, e.g.*, *United States v. Bloch*, 825 F.3d 862, 873 (7th Cir. 2016). A strategic decision is, of course, an intentional one, and we recognize that defendants often waive sentencing arguments in bargaining with the prosecution or in focusing the district court on other, more pressing sentencing issues. We have thus inferred that a defendant's choice to raise certain objections at sentencing, but not others, was strategic and intentional. *United States v.*

*Tjader*, --- F.3d ----, 2019 WL 2441073, at *2 (7th Cir. June 12, 2019); *United States v. Gumila*, 879 F.3d 831, 838 (7th Cir. 2018). Indeed, a defendant's "decision to single out and object to only one condition is the very '[t]ouchstone of waiver,' as it indicates 'a knowing and intentional decision.'" *Bloch*, 825 F.3d at 873 (citation omitted). We have also found waiver when the defendant had a targeted sentencing strategy that led him to waive certain other sentencing arguments. *See United States v. Barnes*, 883 F.3d 955, 957–58 (7th Cir. 2018); *United States v. Walton*, 255 F.3d 437, 442 (7th Cir. 2001). All this stands for a straightforward proposition: In the context of supervised release conditions, evidence of a strategic reason not to object in the district court is a sufficient, but not a necessary, ground on which to find waiver, because it reflects an intentional decision on the defendant's part.

Moreover, in the specific context of supervised release conditions, we have provided guidance to ensure defendants make intentional and informed decisions—decisions that could eliminate appellate review based on waiver. *See United States v. Lewis*, 823 F.3d 1075, 1081–82 (7th Cir. 2016). As we explained in *Lewis*, "[t]he foundation for these limits on appellate review is that a district judge needs to ensure that parties have a fair and genuine opportunity to raise objections in the district court." *Id*. at 1081.

An important factor in giving a defendant the opportunity to make an informed and intentional decision about supervised release conditions is advance notice of the conditions. *United States v. Gabriel*, 831 F.3d 811, 814 (7th Cir. 2016); *United States v. Kappes*, 782 F.3d 828, 842–43 (7th Cir. 2015). "The goal of providing the parties with advance notice of the conditions at issue is to allow the parties to pre-

sent an informed response." *Kappes*, 782 F.3d at 843. We re-
cently clarified why advance notice is necessary in making
an informed decision:

> A defendant who receives advance notice of
> proposed conditions of supervised release has both
> the benefit of advice of counsel and a full oppor-
> tunity to raise objections about arguably vague or
> unjustified conditions of supervised release. Sen-
> tencing in the district court is the time to raise such
> issues, not on appeal, for the first time.

*St. Clair*, 2019 WL 2399597, at *2.

Last, and most obvious, we have concluded that a de-
fendant intentionally waived an appellate challenge to his
supervised release condition when he "affirmatively told the
district court that he had no objection" to the challenged
condition. *United States v. Smith*, 906 F.3d 645, 650 (7th Cir.
2018); *see also United States v. Schrode*, 839 F.3d 545, 555 (7th
Cir. 2016) (affirmative withdrawal of objections to chal-
lenged conditions constitutes waiver). In *Smith*, when dis-
cussing defendant's intentional relinquishment, we reasoned
that the "district court expressly invited objections to the
proposed visitation condition, and Smith's attorney, with the
benefit of having seen the condition in advance, responded
that the condition was 'reasonable.'" *Id*. at 650. We further
articulated that "Smith has not argued that either he or his
attorney was confused or that the response did not indicate
approval." *Id.*

Applying these principles to the circumstances of our
case, the record is clear that Flores made a deliberate and in-
formed decision when she did not challenge the employ-
ment supervised release condition. She had the opportunity

to review the probation office's recommendations with her attorney in advance of sentencing, and at her sentencing hearing, the district judge ensured that Flores had reviewed these conditions with counsel. *See St. Clair*, 2019 WL 2399597, at *2; *Gabriel*, 831 F.3d 814. Counsel also filed written objections to the PSR prior to sentencing, objecting to the relevant conduct calculation and a guideline enhancement, but not the employment condition. We can reasonably infer from Flores's choice to raise certain sentencing objections, but not others, that her decision was strategic and intentional. *See Gumila*, 879 F.3d at 838.

Flores's decision to waive an explanation and reading of the supervised release conditions further confirms her intent. *Tjader*, 2019 WL 2441073, at *2; *Bloch*, 825 F.3d at 872–73. So, too, does the record as a whole. Flores's allocution reflects her desire to engage in meaningful employment and educational training to restart her life in a positive manner once she has served her sentence—another indication that her decision not to object to the employment condition was strategic. *See Barnes*, 883 F.3d at 958.

Due to Flores's intentional relinquishment of her right to appeal the claimed error, we are precluded from reviewing her appellate argument. *See Young*, 908 F.3d at 246 ("An appellate court need not consider a claimed error if the issue has been waived."). We affirm on this basis.

B

In so holding, we are aware of the inconsistencies in our case law and that we have not always applied waiver in this context. To start, because we liberally construe waiver in favor of defendants, *see Butler*, 777 F.3d at 387, we were willing

to exercise our discretion and overlook a signed appellate waiver in the rare and limited instance when a condition was unconstitutionally vague and overbroad in that it prohibited activities protected by the First Amendment and "no reasonable person could know what conduct is permitted and what is prohibited[,]" in *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014). *See United States v. Campbell*, 813 F.3d 1016, 1018 (7th Cir. 2016). In other cases, we did not address waiver in light of intervening changes in supervised release conditions prompted by our decision in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). *See, e.g., United States v. Gill*, 824 F.3d 653, 661 (7th Cir. 2016); *United States v. Poulin*, 809 F.3d 924, 930–31 (7th Cir. 2016). Neither concern is present here.

In other decisions, we simply did not address waiver when applying plain-error review. *See, e.g., Kappes*, 782 F.3d at 844; *United States v. Ross*, 475 F.3d 871, 873 (7th Cir. 2007); *United States v. McKissic*, 428 F.3d 719, 721–22 (7th Cir. 2005). None of these cases, however, *held* that waiver did not apply in this context. At most, they assumed that forfeiture governed. It is well-established "that the unexamined assumptions of prior cases do not control the disposition of a contested issue." *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015). And our earlier assumptions do not withstand scrutiny, as the Supreme Court, like us, has made clear that waiver is a threshold consideration when reviewing for plain error. *Olano*, 507 U.S. at 733; *Young*, 908 F.3d at 246.

We make the point again today. When a defendant does not address supervised release conditions in the district court, this court will assess whether she waived those chal-

lenges. We will find waiver, as we do here, when the defendant has notice of the proposed conditions, a meaningful opportunity to object, and she asserts (through counsel or directly) that she does not object to the proposed conditions, waives reading of those conditions and their justifications, challenges certain conditions but not the one(s) challenged on appeal, or otherwise evidences an intentional or strategic decision not to object.[1]

## C

On a final note, at oral argument, the government articulated that it relied on our prior cases when asserting that plain-error review applied. *See, e.g., Poulin*, 809 F.3d at 930–31. Flores's appellate counsel countered that the government waived its waiver defense by agreeing to plain-error review. Normally, we would enforce the government's waiver, but we are not obligated to do so. *See United States v. Combs*, 657 F.3d 565, 571 (7th Cir. 2011) (per curiam); *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir. 1995).

Here, we decline to enforce the government's waiver due to the inconsistencies in our case law regarding plain-error review in the supervised release context, as discussed directly above, and our previous confusion over the terms forfeiture and waiver. Further, in the face of the recent influx of supervised release condition challenges before this court where such conditions were not challenged before the district court, we are compelled to emphasize that waiver is part of our plain-error review.

---

[1] Before issuing this opinion, we circulated it to all judges in active service under Circuit Rule 40(e). No judge voted to hear this case *en banc*.

### III

The district court gave Flores every opportunity to make the challenge she makes now on appeal. Flores expressly declined. That precludes our appellate review, but it does not permanently bind Flores. We have long assumed that probation officers work *with* defendants, not against them, to help defendants transition back into society after prison. They do not, and must not, nitpick defendants and seek reprimands or revocations over small, unreasonable concerns. There is another safety valve as well, even for defendants who waive conditions challenges on direct appeal. Should certain conditions prove too onerous or ill-defined, or should circumstances change during incarceration or after release, 18 U.S.C. § 3583(e)(2) allows defendants like Flores to petition the court for a modification of their supervised release conditions, as the district court properly informed Flores here.

For today, however, Flores intentionally waived her right to challenge the employment condition, and so we affirm.