In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3145

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH CANFIELD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 07-cr-20065 — **Michael M. Mihm**, *Judge.*

ARGUED MARCH 31, 2021 — DECIDED JUNE 21, 2021

Before SYKES, *Chief Judge*, and FLAUM and EASTERBROOK, *Circuit Judges*.

FLAUM, *Circuit Judge*. Defendant-appellant Joseph Canfield was sentenced to prison and supervised release for possessing child pornography. In a subsequent proceeding for revocation of his supervised release, the district court sentenced Canfield to twenty months' imprisonment and an additional five years' supervised release, a term of supervised release which all parties referred to as "mandatory." In this

appeal, Canfield challenges the application of the additional five-year term as not actually mandatory but instead the result of a mutual mistake.

Going no further than our threshold waiver inquiry, we now affirm the judgment of the district court. Canfield had ample advance notice of the terms of his supervised release, was given a meaningful opportunity to object, indeed advanced several objections to those terms, and went so far as to affirmatively advance the argument he now challenges on appeal. Those actions amount to waiver.

## I.    Background

In January 2008, the district court sentenced Canfield to seventy-eight months' imprisonment and three years' supervised release for knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). After his release from custody, Canfield commenced supervision in June 2013, subject to a series of special conditions.

Canfield's first several years of supervision went without incident. The district court modified conditions of Canfield's supervised release in May 2016, however, to extend supervised release for an additional one-year period to allow for him to meet treatment goals and successfully complete sex offender counseling. In response to the probation office's concern about Canfield's "high risk behavior in violation of his conditions of supervision," the district court again modified conditions of his supervised release in October 2016, extending supervision for an additional one-year period and requiring 180 days of home confinement. Specifically, Canfield had purchased an unreported smartphone with unfiltered internet access and used it to view adult pornography and also

used his mother's smartphone, without her permission, to view adult pornography. Moreover, a police search of his residence found two DVDs containing adult pornography, which Canfield admitted to purchasing.

### A. First Revocation

The district court subsequently revoked Canfield's supervised release several times. First, in March 2017, the probation office filed a petition to revoke Canfield's supervised release. The petition cited Canfield's failure to participate in sex offender treatment ("unsuccessful[] discharge[] from sex offender treatment services … for failing to follow the treatment program rules and noncompliance with his treatment plan") and unauthorized contact with a person under the age of eighteen ("unsupervised contact with a 9 month old female infant") as grounds for supervision revocation. Following a hearing on the petition in May 2017, the district court revoked Canfield's supervised release and imposed a new sentence of six months' imprisonment and five additional years' supervised release. In the record of Canfield's supervised release revocation and sentencing proceedings, the district judge noted that "[t]he supervised release period would be not less than five years up to life minus any term of imprisonment imposed upon revocation."

Following an appeal,[1] the district court entered an amended revocation judgment in November 2018. The

---

[1] On appeal, we vacated three conditions of Canfield's supervised release: third-party risk notification, drug testing and substance abuse treatment, and a prohibition on all access to sexually explicit material. We affirmed the condition banning use of the internet to access sexually explicit material. *See United States v. Canfield*, 893 F.3d 491, 498 (7th Cir. 2018).

district court entered other uncontested modifications to Canfield's supervised release between December 2018 and September 2019.

### B. Second Revocation

At the end of December 2019, the probation office filed a second petition to revoke Canfield's supervised release. The petition cited Canfield's failure to participate in sex offender treatment on account of "numerous treatment contract violations and excessive absences" and "possession of an unreported internet capable cell phone … with no filtering software installed." The probation office filed a supplemental petition in February 2020, noting Canfield's unsuccessful discharge from substance abuse treatment for "consistently making inappropriate comments in treatment … and for being consistently late or missing scheduled counseling groups." Canfield was taken into custody and detained in March 2020. In June 2020, the parties agreed to a modification of the terms of supervision, and the district court entered a corresponding order directing Canfield to serve ninety days at the Ford County Jail with credit for time served and ninety days in home confinement. As a result, the district court granted the government's motion to withdraw the petition to revoke supervised release.

### C. Third Revocation

In July 2020, the probation office filed a third petition to revoke Canfield's supervised release, alleging that he had unauthorized contact with a person under the age of eighteen. Two minor females, both age sixteen, reported living at Canfield's apartment for four to five days. After Canfield was charged in state court with violations of Illinois sex-offender

laws for failure to register within three days after beginning to reside in a household with a child under eighteen years of age who is not his own child, the probation office amended this petition to revoke supervised release to include a violation of his supervision condition requiring that he not commit another federal, state, or local crime. A magistrate judge ordered Canfield detained pending the violation hearing.

Prior to the hearing, defense counsel noted that Canfield's anticipated penalties under the U.S. Sentencing Guidelines would include "3 to 9 months imprisonment, plus five additional years of supervised release." Relevant to this appeal, the violation memorandum, filed by the probation office four weeks before the revocation hearing, stated under "Statutory Supervised Release Provisions" that the applicable sentencing options were "[n]ot less than 5 years to life" and specifically referenced 18 U.S.C. § 3583(k).

At the beginning of Canfield's revocation hearing, his attorney noted that she had reviewed the petitions and violation memorandum with Canfield. Before accepting Canfield's guilty plea, the court recited the applicable penalties. Canfield himself confirmed he had reviewed the report and, when given the opportunity by the court, challenged only an inaccuracy that his counsel characterized as "irrelevant." Counsel made clear in this hearing that Canfield's priority was to "get … done with supervised release to the best of our ability."

In response to his guilty plea, the district court revoked Canfield's supervised release and sentenced him to twenty months' imprisonment and an additional five years' supervised release. Prior to imposing the sentence, the district court adopted the recommended sentencing ranges for

imprisonment and supervised release as summarized in the violation memorandum, which included a "minimum" supervised release term of five years. Although Canfield's counsel objected to one proposed supervision condition, she made no objections to the sentencing range, which encompassed a minimum supervised release term of five years. Indeed, both government and defense counsel referred to the five-year supervised release term as "mandatory." Canfield waived a reading of the conditions of supervision. The district court entered a final judgment on October 23, 2020.

Canfield now appeals.

## II.    Discussion

Canfield contends the district court plainly erred in sentencing him to a five-year term of supervised release, raising for the first time on appeal the argument that this sentence was not actually mandatory under 18 U.S.C. § 3583(k). As relevant here, two statutory provisions govern the inclusion of a term of supervised release after a defendant's imprisonment: 18 U.S.C. § 3583(h), directed at supervised release following revocation, and § 3583(k), directed in part at the authorized term of supervised release for offenses under 18 U.S.C. § 2252A. The crux of Canfield's argument is that the five-year mandatory minimum found in § 3583(k)'s first clause is relevant only at an initial sentencing hearing, while § 3583(h), which mentions no mandatory minimum, governs this imposition of a supervised release term following revocation.

Although we generally review statutory interpretation questions de novo, *see United States v. Shaw*, 957 F.3d 734, 738 (7th Cir. 2020), a challenge not raised before the district court is, at best, reviewed for plain error, *see United States v. Flores*,

929 F.3d 443, 447 (7th Cir.), *cert. denied*, 140 S. Ct. 504 (2019). "The first step in plain-error review, as the Supreme Court has repeatedly said, is to ask whether the defendant intentionally relinquished the challenge [he] now presents." *Id.* at 445 (citing cases). If yes, appellate review is precluded. *See id.* at 447.

We begin and end our inquiry at this first step of plain-error review. That "the failure to make timely assertion of … right[s] before a tribunal having jurisdiction to determine [them]" may limit appellate consideration is a procedural principle quite familiar to courts. *United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). We categorize unraised arguments as either waived or forfeited. In the context of sentencing, "[w]aiver occurs when a party intentionally relinquishes a known right and forfeiture arises when a party inadvertently fails to raise an argument in the district court." *Flores*, 929 F.3d at 447 (first citing *Olano*, 507 U.S at 733; and then citing *United States v. Waldrip*, 859 F.3d 446, 450 (7th Cir. 2017)). We construe waiver principles "liberally in favor of the defendant." *United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015) (citing *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010)).

Accepting that even "[t]he most basic rights of criminal defendants are … subject to waiver," *Peretz v. United States*, 501 U.S. 923, 936 (1991), "[w]hat suffices for waiver depends on the nature of the right at issue," *New York v. Hill*, 528 U.S. 110, 114 (2000); *see also Olano*, 507 U.S. at 733 ("Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.").

Adhering to this rights-dependent framework, we recently clarified our approach to waiver and forfeiture in the context of supervised release conditions challenged for the first time on appeal. In *United States v. Flores*, we explained:

> We will find waiver [of objections to supervised release conditions] … when the defendant has notice of the proposed conditions, a meaningful opportunity to object, and [he] asserts (through counsel or directly) that [he] does not object to the proposed conditions, waives reading of those conditions and their justifications, challenges certain conditions but not the one(s) challenged on appeal, or otherwise evidences an intentional or strategic decision not to object.

929 F.3d at 450.

Here, finding these factors enumerated in *Flores* satisfied, and unmoved by Canfield's claims of inadvertent attorney action, we now find waiver. By following *Flores*, "we [do] not abandon our responsibility to review conditions of supervised release" but rather "restore[] the regular processes of appellate review to challenges to supervised release, which should be raised first in the district courts." *United States v. Hunt*, 930 F.3d 921, 925 (7th Cir. 2019).

### A.  Advance Notice of Proposed Conditions

Guided by the principle outlined in *Flores*, we first ask if Canfield had sufficient advance notice of the proposed conditions, specifically, the "mandatory" supervised release term. *See Flores*, 929 F.3d at 450. Before sentencing Canfield to jail and reimposing supervised release, the district judge specifically asked Canfield: "Did you have a reasonable opportunity

to read this [presentence] report and review it with your attorney?" He responded yes.

Unexpected conditions with respect to supervised release undercut a finding of advance notice and thus caution against waiver. *Compare United States v. Thompson*, 777 F.3d 368, 378–79 (7th Cir. 2015) (finding no waiver when suggested conditions of supervised release "were sprung on the defendant at the sentencing hearing"), *with United States v. Gumila*, 879 F.3d 831, 837 (7th Cir. 2018) (finding waiver in part because the presentence report gave "written notice of the proposed term and conditions of supervised release," along with justifications for each, "well in advance of the sentencing hearing").

No such unexpected conditions or surprises were present in this case. This fact distinguishes the case at hand from *United States v. Wylie*, 991 F.3d 861 (7th Cir. 2021), which Canfield points to as dispositive. In *Wylie*, the Presentence Investigation Report ("PSR") indicated the court could impose a sentence below the statutory minimum because all requirements of the "safety valve" under 18 U.S.C. § 3553(f) were met, and the district court in turn adopted the PSR prepared by the probation office at the sentencing hearing. *Wylie*, 991 F.3d at 862. Directly contradicting its adoption of the PSR, however, the district court concluded by stating: "The crime of conviction requires that you get a term of supervised release that's at least five years long. I don't see a reason to make it any longer so I would propose to impose that five-year term." *Id.* We found the defendant forfeited, but did not waive, his objection that the district court imposed the term of supervised release under the erroneous belief that it was bound by a statutory minimum. *Id.* at 863.

In arguing for forfeiture now, Canfield equates the mutual mistake in the present case with the "misapprehension" about imposing a mandatory-minimum term of supervised release in *Wylie*. Despite certain factual similarities between the cases, we reject that comparison. Canfield was extended advance notice, while the defendant in *Wylie* was not—considering the district court's change in course at the sentencing hearing in that case. *See id.* at 862. Thus, Canfield's advance notice conforms with the requirements of waiver under *Flores*.

### B. Opportunity to Object and Actual Objection

We next look to whether Canfield had a meaningful opportunity to object, failed to object, waived reading of the conditions of his supervised release, and selectively challenged certain conditions but not the one presently on appeal. *See Flores*, 929 F.3d at 450. Without the need for detailed analysis, we conclude these factors support our finding that Canfield has waived his argument on appeal.

At two points in the sentencing hearing, the district judge inquired whether Canfield felt anything in the updated presentence report was "inaccurate or incomplete" and gave him the opportunity to challenge the recommended conditions of supervised release. Canfield's counsel challenged the supervised release condition restricting his ability to continue seeing his girlfriend due to her felony conviction, and Canfield himself raised a factual inaccuracy within the report. The district court rejected the first challenge, deemed the second irrelevant, and denied Canfield's motion. Canfield confirmed he had no additional objections and waived reading of the conditions of supervised release. At no point was the mandatory nature of the five-year supervised release term raised or otherwise disputed.

In this context, Canfield's decision to selectively object to conditions is "the very [t]ouchstone of waiver," evidencing a "knowing and intentional decision." *Flores*, 929 F.3d at 448 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Bloch*, 825 F.3d 862, 873 (7th Cir. 2016)). Given the facts of this case, Canfield's multiple opportunities to object and decision to selectively object to the supervised release conditions aligns with a finding of waiver under *Flores*.

## C. Other Evidence of Intentional or Strategic Decision Not to Object

We finally ask if, taken together, the record provides other evidence of an intentional or strategic decision not to object. *See id.* at 450. We have previously found forfeiture, not waiver, in the sentencing context when a defendant's "failure to object … resulted from an oversight by defense counsel and was therefore 'accidental rather than deliberate.'" *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (quoting *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001)). Today, we address waiver in the context of an affirmative advancement, meaning the presentation of a specific argument to the court, as distinct from silence or a reflexive "no objection" response during a rote colloquy. We take this opportunity to clarify that affirmative advancement of a "mandatory" supervised release term, even if premised on a mutual mistake about applicable supervised release conditions, evidences an intentional decision for the purposes of appellate waiver analysis.

At the outset, we note that we are unconvinced by the government's argument that reasonable defense counsel would frame a discretionary term of supervision as mandatory to

gain a strategic advantage, especially given counsel's clear articulation of defendant's primary goal of expedient completion of supervised release. Lack of strategic purpose alone, however, is not enough to find forfeiture. As we have previously observed, "[w]hile there may not be a *good* strategic reason for holding back a valid objection to a condition, that fact does not render the defendant's decision any less intentional." *Bloch*, 825 F.3d at 873.

Given this emphasis on intentionality, we now underscore the distinctions between a negligent omission and an affirmative advancement of a term of supervised release. Negligent omission supports a finding of forfeiture—i.e., of no waiver. *See Butler*, 777 F.3d at 386–87 (finding forfeiture when "the record" evidenced counsel's failure to raise an argument was "due to negligence," devoid of any "manifestation of an intentional choice not to assert a right"); *Jaimes-Jaimes*, 406 F.3d at 848 (finding forfeiture when "an ambiguous record" evidenced counsel's failure to raise an argument resulted from an oversight). By contrast, the record here is not ambiguous; instead, the record evidences intentionality through defense counsel's affirmative advancement of the five-year mandatory-minimum term of supervised release. To preserve the functionality of waiver doctrine, we limit the negligent omission carve out, finding it inapplicable in cases of affirmative advancement of supervised release terms, such as this one.

We find support for this position outside the supervised release context. For example, we have differentiated between "negligently bypass[ing] an opportunity to challenge" and "affirmative[ly] approv[ing]" of a proposed jury instruction—with the first lending itself to forfeiture and the second resulting in waiver. *United States v. LeBeau*, 949 F.3d 334, 341–

42 (7th Cir. 2020). Here, as in analogous contexts, we underscore that "a court cannot easily discern whether the attorney bypassed a challenge for strategic reasons (which would result in waiver) or whether the attorney simply failed to recognize error that [they] otherwise would have raised" from such a statement. *See United States v. Natale*, 719 F.3d 719, 730 (7th Cir. 2013).

Although our waiver inquiry is not rigid but instead "varies depending on the right at issue and the circumstances of the case," *Flores*, 929 F.3d at 448, the above reasoning is persuasive in the supervised release context and comports with existing caselaw. Our precedent indicates that when a defendant "specifically requested" a supervised release condition, he cannot then challenge that condition on appeal; such a request "constitutes waiver." *United States v. Golden*, 843 F.3d 1162, 1167 (7th Cir. 2016); *see also United States v. Cary*, 775 F.3d 919, 927 (7th Cir. 2015) ("By asking for the very condition the court subsequently imposed, [the defendant] waived any argument against it."); *cf. United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016) (noting waiver at sentencing is undercut when a defendant "never actively disclaimed the positions he now raises" on appeal). Even amid allegations of counsel negligence, we find when "counsel *affirmatively used* the evidence to which [the defendant] now objects as part of his theory of the case" that "[w]e are hard-pressed to interpret this as a forfeiture." *United States v. Cooper*, 243 F.3d 411, 417 n.3 (7th Cir. 2001).

Any other finding would put courts in the difficult situation of attempting to discern whether an attorney bypassed a challenge negligently or for strategic reasons. Given that both explicit approval of sentencing conditions and strategic

decisions not to raise an argument indicate waiver, *see United States v. Farmer*, 755 F.3d 849, 853 (7th Cir. 2014), we reject that the affirmative advancement of a mandatory five-year term of supervised release, even if premised on a mutual mistake by all parties, should be treated the same as accidental silence. To find otherwise would render our waiver doctrine functionally useless. We decline to do so.

### III.    Conclusion

Regardless of whether the affirmative advancement in question here "was an oversight" or "reflected sound strategy," the principle outlined in *Flores* requires us to find Canfield's challenge waived under the facts and circumstances of his case. *See United States v. Barrett*, 981 F.3d 644, 645-46 (7th Cir. 2020) (holding when "[e]very condition identified in *Flores* is present[,] … that reality forecloses our review of [defendant's] belated challenge"). While direct appeal is not available, Canfield is not foreclosed from pursuing collateral review for an ineffective assistance of counsel claim under 28 U.S.C. § 2255.

For these reasons, we AFFIRM Canfield's sentence.