In the

# United States Court of Appeals

## for the Seventh Circuit

_____

No. 23-1294

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OTHO HARRIS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-CR-00916(1) — **John J. Tharp, Jr.**, *Judge.*

_____

ARGUED MARCH 5, 2024 — DECIDED MAY 23, 2024

_____

Before SYKES, *Chief Judge*, and LEE and KOLAR, *Circuit Judges*.

SYKES, *Chief Judge*. In September 2019 Otho Harris visited a Boost Mobile store for assistance with his broken cellphone. He became enraged when he was told that it could not be repaired. He returned in the middle of the night and set fire to the store, causing extensive damage. Harris was charged with arson in violation of 18 U.S.C. § 844(i). After difficult relationships with three different appointed attorneys, he opted to

represent himself and eventually pleaded guilty. He was sentenced to eight years in prison and ordered to pay $195,701 in restitution.

Represented by counsel on appeal, Harris challenges only the restitution order, arguing that it was not supported by a proper investigation and determination of the loss amount. The presentence report ("PSR") and the government's written version of the offense incorporated a 13-page insurance claim prepared by the victim's insurer itemizing the losses from the fire. Harris never objected to this accounting of the loss amount. Quite the opposite: he had an opportunity to review these materials before sentencing, assured the judge that he had done so, and affirmed the accuracy of the factual material in the PSR.

Having confirmed the accuracy of the facts in the PSR, which included the insurance company's documentation of the victim's losses, Harris cannot now contest the restitution amount. Even if he forfeited rather than waived this restitution challenge, we see no basis for reversal under the plain-error standard. We affirm the judgment.

## I. Background

On September 9, 2019, Harris took his broken cellphone to a Boost Mobile store in Chicago to see if it could be repaired. He became angry when a store employee told him that the phone had sustained water damage and could not be fixed. Harris hurled his phone to the floor and left the store. He returned that night—more precisely, at about 4:30 a.m. on September 10—and set fire to the store. He first threw an object at the glass front door, breaking it. He then poured gasoline through the broken door, lit the accelerant, and fled the scene

when the flames started. The store was heavily damaged in the fire.

In December 2019 a federal grand jury returned an indictment charging Harris with one count of arson in violation of § 844(i), which makes it a federal crime to set fire to a building used in an activity affecting interstate commerce. The case moved very slowly. For two years, Harris had trouble establishing a productive relationship with his appointed counsel. The district court appointed three different attorneys, but Harris had disagreements with each one. When the third appointed lawyer moved to withdraw, he explained that Harris now wanted to represent himself. After holding a hearing on the motion, the judge determined that Harris knowingly and voluntarily waived his right to counsel and could represent himself.

Over the next year, Harris filed numerous pretrial motions and requests with the court. A few weeks before the scheduled trial date, he agreed to plead guilty and signed a written plea agreement with the government. As relevant here, he acknowledged in the agreement that his sentence must include an order of full restitution to the victims of the crime (including insurance companies) in an amount to be determined by the court. The judge accepted his guilty plea and set the case for sentencing.

The probation office filed a presentence report about a month before the sentencing hearing. It included a description of the financial impact of Harris's crime on two victims—the owner of the Boost Mobile store and his insurer—in the total amount of $195,701. The PSR incorporated the insurance company's 13-page claim report, a copy of which was attached to the government's written version of the offense.

This document provided a detailed itemization of the store's losses, which included telecommunications devices and accessories for sale, business equipment, and office fixtures.

The available insurance coverage was quite limited: the store owner's policy limit was just $35,000, which the insurer reached after appraising 33 of 104 items included in the claim. The insurance company paid its full policy limit to the store owner, so the probation officer recommended that the court order Harris to pay $35,000 to the insurer and the balance— $160,701—to the store owner.

At the sentencing hearing, the judge confirmed that Harris had received and reviewed the PSR and the government's version of the offense. The judge also confirmed that Harris had not submitted any objections or arguments in opposition to the factual matters in the PSR. The judge then asked Harris if he was satisfied with the accuracy of the factual information in the PSR. Harris said yes.

After confirming the statutory minimum sentence and the advisory sentencing range under the Sentencing Guidelines, the judge heard arguments from both parties and imposed a sentence of eight years in prison. The judge also adopted the PSR's restitution figures and ordered Harris to pay restitution in the total amount of $195,701—$35,000 to the insurer and the balance to the store owner.

## II. Discussion

Harris's appeal challenges only the restitution order. Under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, an order of restitution was mandatory in his case, as he acknowledged in his plea agreement. He contends that the district judge, the probation office, and the government failed

to comply with 18 U.S.C. § 3664 and Rule 32(c)(1)(B) of the Federal Rules of Criminal Procedure, which prescribe the procedures for issuing restitution orders. The statute and the rule require the probation officer to investigate and provide "sufficient" information to permit the court to enter an order of restitution.[1]

The government maintains that Harris waived his right to challenge the restitution order by expressly affirming the accuracy of the factual material in the PSR at the sentencing hearing. We agree. "Arguments not properly preserved during sentencing are either forfeited or waived." *United States v. Hernandez*, 44 F.4th 1053, 1057 (7th Cir. 2022). "The former

---

[1] As relevant, 18 U.S.C. § 3664(a) states:

> (a) For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

In the event of a dispute about restitution, the government bears the burden of proving the amount of the victim's loss. *Id.* § 3664(e).

Rule 32(c)(1)(B) of the Federal Rules of Criminal Procedure reads: "Restitution. If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."

permits limited appellate review; the latter precludes it." *Id.* at 1057–58. Though we have not always been clear about the difference between forfeiture and waiver, our more recent cases have clarified the distinction. *See, e.g.*, *United States v. Flores*, 929 F.3d 443, 447–49 (7th Cir. 2019).

"Waiver occurs when a party intentionally relinquishes a known right and forfeiture arises when a party inadvertently fails to raise an argument in the district court." *Id.* at 447. Waiver extinguishes appellate review; forfeited arguments are reviewed under the plain-error standard set forth in Rule 52(b) of the Federal Rules of Criminal Procedure. *United States v. Olano*, 507 U.S. 725, 733 (1993).

The *Olano* plain-error framework proceeds in four steps and begins with the threshold question of waiver: "First, there must be an error or defect—some sort of '[d]eviation from a legal rule'—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *Olano*, 507 U.S. at 732–33). "Second, the legal error must be clear or obvious, rather than subject to reasonable dispute." *Id.* (citing *Olano*, 507 U.S. at 734). "Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 734). The fourth and final step requires the court to make a discretionary judgment about whether the error warrants a remedy; reversal is justified "only if the error 'seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736). Satisfying all four steps "is difficult, as it should be." *Id.* (quotation marks omitted).

The conditions for finding waiver "depend on the right at stake." *Olano*, 507 U.S. at 733. The bar is quite high in the context of a guilty plea, but less is needed to waive challenges to jury instructions, sentencing issues, or conditions of supervised release. *Flores*, 929 F.3d at 448. Particularly relevant to this case, we have held that "[a] criminal defendant waives the right to contest the judge's factual findings at sentencing when he expressly states on the record that he has no objection to the findings." *United States v. Coffin*, 23 F.4th 778, 780–81 (7th Cir. 2022) (quotation marks omitted). Evidence of acquiescence is also relevant, especially "acquiescence … in the face of notice." *Hernandez*, 44 F.4th at 1058.

Here the judge began the sentencing hearing by confirming that Harris had received and reviewed both the PSR and the government's written version of the offense, which included a copy of the itemized insurance claim detailing the losses from the fire damage. The judge also confirmed that Harris had no objections or arguments in opposition to the factual matters in the PSR. Finally, the judge asked Harris if he was satisfied with the accuracy of the factual information in the PSR. He responded in the affirmative. The record is clear that Harris had ample notice of the restitution amount, the factual basis for it, and an opportunity to object. He did not object; on the contrary, he affirmed that he was satisfied with the accuracy of the factual material in the PSR. That's a waiver.

Harris resists this conclusion, noting that the judge did not question him *specifically* about restitution and that there was no strategic reason for him to forgo an objection to the amount of restitution he owed. He also argues that a more rigorous standard should apply to waiver in the context of restitution

because, unlike conditions of supervised release, the amount of restitution is not modifiable. *Compare* 18 U.S.C. § 3664(o) (permitting changes to restitution primarily concerning a payment schedule), *with* 18 U.S.C. § 3583(e) (permitting termination, extension, or revocation of supervised release).

We're not persuaded. We have previously recognized that resolving waiver questions in the restitution context—like waiver of arguments about supervised-release conditions—does not require a rigid analysis. *Compare Flores*, 929 F.3d at 448–50 (holistic evaluation of waiver in the context of an unpreserved challenge to supervised-release conditions), *with Hernandez*, 44 F.4th at 1057–60 (same as to restitution). And although the existence (or absence) of a strategic reason to forgo an objection can be informative, *see United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020), we have held that "evidence of a strategic reason not to object … is a sufficient, but not a necessary, ground on which to find waiver," *Flores*, 929 F.3d at 448. We have also explained that identifying a strategic reason for omitting an objection may be more relevant where the record is ambiguous as to waiver. *See Hernandez*, 44 F.4th at 1060.

Harris's conduct at the sentencing hearing was anything but ambiguous. He had a month's time to review the PSR and the incorporated insurance accounting, which detailed the restitution amount recommended by the government and the probation officer. He was given an opportunity to raise any concerns regarding the factual accuracy of the PSR. Harris therefore had "ample advance notice" of the proposed restitution amount, was "expressly invited" to object, and "expressly declined" to do so, confirming that he had no objection and expressly *affirming* the accuracy of the facts in

the PSR. *United States v. Lewis*, 823 F.3d 1075, 1079 (7th Cir. 2016).

Even if we were to conclude that Harris forfeited rather than waived his challenge to the restitution order, we would not reverse on plain-error review. An error is "plain" under the *Olano* standard only if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. Here the judge relied on information presented by the probation officer, as required by statute, and accepted the itemized claim accounting from the insurance company as a reasonable measure of the losses from the fire. On appeal Harris raises nuanced arguments about the appropriate measure of loss for consumer goods like cellphones and other telecommunications equipment, including arguments about depreciation and the difference between retail and wholesale price and replacement and market value. That hardly describes a "clear or obvious" error. Reasonable minds can differ on how a court should measure pecuniary loss in this context; accepting an insurance-claim accounting is certainly one reasonable option. To reverse on plain-error review would require us to say that the judge should have raised and resolved these complex and fact-intensive questions unprompted. It's not possible to say that here.

AFFIRMED