In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 24-3120

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SEAN GRUSD,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-CR-00193 — **Sara L. Ellis**, *Judge*.

———————————

ARGUED DECEMBER 16, 2025 — DECIDED JANUARY 14, 2026

———————————

Before BRENNAN, *Chief Judge*, and SYKES and TAIBLESON,
*Circuit Judges*.

TAIBLESON, *Circuit Judge*. Over the course of about two
years, Sean Grusd devised and carried out a substantial fraud
scheme. He was convicted of wire fraud, and he agreed to pay
about $23.2 million in restitution to 15 sets of victims. The dis-
trict judge ordered him to pay only about $21.6 million, how-
ever, relying on the parties' representations at sentencing
about amounts that Grusd had already paid.

Grusd now challenges that restitution order. He argues
that the judge plainly erred by subtracting approximately $1.6
million from the agreed-upon total without further substanti-
ation of the amounts he had already paid. But Grusd waived
that argument by acquiescing to the $1.6 million credit, and
he therefore cannot challenge the credit on appeal. And even
if Grusd had merely forfeited this claim, it does not come close
to meeting the standards for plain-error review. We affirm the
judgment.

## I. Background

In 2021 and 2022, then-Chicago resident Grusd falsely con-
vinced numerous victims that he was a well-educated and
successful investor. Grusd represented that he would invest
his victims' funds in promising businesses; for some, these
funds were their life savings or money they hoped to use for
their children's education. Grusd substantiated his lies with
fraudulent stock certificates, purchase agreements, and bank
statements. In reality, Grusd used his victims' money for ex-
travagant personal spending—including, for example, buy-
ing multiple luxury cars for women he met on the internet.

Grusd pleaded guilty in May of 2023 to one count of wire
fraud in violation of 18 U.S.C. § 1343. In his plea agreement,
Grusd admitted that he "defrauded the Investor Victims out
of approximately $23,155,000." He "acknowledge[d] that the
total amount of restitution owed to the Investor Victims is
$23,155,000, minus any credit for funds repaid prior to sen-
tencing," and that the court would order him "to make full
restitution in the amount outstanding at the time of sentenc-
ing."

Consistent with the plea agreement, the Presentencing In-
vestigative Report ("PSR") issued before Grusd's sentencing
noted that "[b]oth parties have agreed that the defendant
owes at least $23,155,000 in restitution to investor victims."
The PSR accordingly advised that "[p]ursuant to 18 U.S.C.
§ 3663A, restitution in the total amount of $23,155,000 shall be
ordered in this case," and it provided a breakdown allocating
that total among Grusd's 15 sets of victims. At no point did
Grusd challenge that accounting or dispute the $23,155,000
figure.

At sentencing, Grusd confirmed that he had no objections
to the calculations in the PSR. Before the parties made their
sentencing arguments, the prosecutor noted:

> Judge, [Grusd's counsel] Mr. Greenberg asked
> me to tell the Court with respect to restitution—
> and we can get to this later, but I assume he
> might want to mention it in his presentation—
> there has been a small recovery from third par-
> ties. It's about a million-six. When we get to that
> number, obviously we can give the Court the ex-
> act figures.

Grusd's counsel responded, "Well, that was voluntary. It
wasn't—it was a voluntary return of things. It was in connec-
tion with civil stuff."

Grusd's counsel then asked to speak to Grusd off the rec-
ord, did so, and thereafter began his sentencing remarks.
Those remarks focused, in large part, on Grusd's recent false
representation that he was the beneficiary of a trust that could
repay his victims in full. Grusd's counsel acknowledged that
Grusd had lied about wiring these purported funds, and the

judge observed that Grusd's lie had given false hope to his victims about the amounts they might recover.

After hearing arguments from both parties and victim testimony, the judge imposed a within-guidelines sentence of 84 months' imprisonment. Turning to restitution, the judge sought the precise updated figure from the prosecutor, who confirmed that "[t]he number now is $21,557,739." The judge therefore ordered "that amount in restitution with credit for any payments that [Grusd] may make." Grusd did not object. Before the hearing concluded, the judge asked the parties if any arguments or issues remained to be addressed; both said "No."

## II. Discussion

On appeal, Grusd challenges only his restitution order. He does not dispute that he owed his victims $23,155,000 in total, nor that an order of restitution was mandatory in this case. *See* 18 U.S.C. § 3663A (Mandatory Victims Restitution Act of 1996). Instead, Grusd claims that the district judge erred by reducing that $23,155,000 figure by approximately $1.6 million without sufficient factual findings. But before considering the merits of that argument, we must address Grusd's failure to raise it below.

The government argues that Grusd waived his challenge to the restitution order, and we agree. "'Waiver occurs when a party intentionally relinquishes a known right,'" and it "extinguishes appellate review." *United States v. Harris*, 102 F.4th 847, 851 (7th Cir. 2024) (quoting *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019)). Forfeiture, by contrast, "arises when a party inadvertently fails to raise an argument," and it permits limited appellate review. *Flores*, 929 F.3d at 447. To

distinguish waiver from forfeiture in the sentencing context, "we address each omission in light of the surrounding circumstances to determine whether the defendant's decision not to object was knowing and intentional." *Id.* at 448.

Here, the record shows that Grusd waived any objection to the $1.6 million restitution credit. The prosecutor raised the credit at the beginning of the sentencing hearing, explaining that it resulted from a "small recovery from third parties." The prosecutor stated that defense counsel had requested the prosecutor relay this information to the court, and defense counsel did not question or correct that statement. Instead, defense counsel responded by explaining that the credit was due to a "voluntary return … in connection with civil stuff." That clarification made sense: The $1.6 million payment could reduce Grusd's restitution obligation if it constituted a "return of … property" by Grusd or someone acting on his behalf—but not, as the prosecutor's remarks might have suggested, if it was a third-party insurance payment. *See* 18 U.S.C. §§ 3663A(b)(1)(B)(ii), 3664(f)(1)(B). Grusd's counsel then discussed, at some length, the closely related topic of Grusd's false representations that he could repay his victims in full. Again, Grusd's counsel said nothing to call the $1.6 million number into question. And at the end of the hearing, after the judge had ascertained the updated restitution number, Grusd's counsel confirmed that no issues remained to be discussed.

"[T]his pattern of 'missed opportunities'" to object and "inaction in the face of notice" points to waiver, not forfeiture. *United States v. Hernandez*, 44 F.4th 1053, 1058 (7th Cir. 2022) (quoting *United States v. Mansfield*, 21 F.4th 946, 955 (7th Cir. 2021)). And Grusd had good reason to go along with the $1.6

million figure: It was his burden to prove the amount by which the $23,155,000 loss should be reduced to reflect payments already made to victims. *See United States v. Anderson*, 866 F.3d 761, 765 (7th Cir. 2017) ("[W]hen offset is the issue, the defendant bears the burden of proof because he knows best what he returned to the victim."); *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014) ("Courts have decided it is appropriate to place on the defendant the burden of proving that the loss amount should be reduced by compensation received by the victim from the defendant."). By acquiescing to the prosecutor's joint representation, Grusd benefited from a $1.6 million reduction to his restitution obligation without having to present additional evidence about victim payments. That strategic benefit favors a finding that Grusd intentionally chose not to object. *See, e.g.*, *Hernandez*, 44 F.4th at 1059.

Grusd thus waived his right to challenge the restitution order. But even if he had merely forfeited this claim, his appeal would fail. Forfeited issues are reviewed for plain error, which permits us to grant relief only if a party establishes (1) an error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected "the fairness, integrity or public reputation of judicial proceedings." *United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024) (en banc) (quotation omitted). Grusd can make none of those showings.

Grusd argues that the district judge plainly erred by relying on the $1.6 million figure without requiring more evidence about its origin. That argument is a head-scratcher, given that the burden for presenting that evidence lay with Grusd. In any event, in these circumstances it was appropriate (and efficient) for the judge to rely on the parties' representations: The prosecutor proffered a fact that was favorable to the

defendant, describing it as a joint representation; the defendant responded and addressed related issues without calling into any doubt the prosecutor's on-the-record assertion. The judge did not err—plainly or otherwise—by ordering exactly what the parties asked. *See, e.g.*, *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005).

Nor can Grusd show that the restitution credit compromised his substantial rights or seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Page*, 123 F.4th at 864 (quotation omitted). To the contrary, Grusd's argument implies that the district judge would *not* have erred by ordering him to pay the full $23.2 million yet *did* err by ordering him to pay less. This is an untenable position. If the district judge erred in granting the $1.6 million credit, then Grusd received a windfall, not a deprivation of substantial rights so serious that it calls into question the integrity of judicial proceedings.

* * *

Grusd's waiver precludes appellate review of his challenge to the district court's restitution award. Accordingly, the district court's judgment is

AFFIRMED.