In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1231

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ODONIS D. PARKER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:19-cr-00051-DRL-SLC — **Damon R. Leichty**, *Judge*.

_____

SUBMITTED FEBRUARY 17, 2021[1] — DECIDED AUGUST 30, 2021

_____

Before SYKES, *Chief Judge*, and FLAUM, and ROVNER, *Circuit Judges*.

_____

[1] We have agreed to decide this case without oral argument because the parties jointly moved to waive oral argument, and we agree that the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. Civ. P. 34(a)(2)(C). See appellate record at 32.

ROVNER, *Circuit Judge*. Selina Schutt, her three young children, and her boyfriend, Jamayl Wash, were driving into her apartment complex in Fort Wayne, Indiana, when shots rang out. Wash's Hyundai Sonata was hit with a barrage of bullets, including one that grazed the top of his scalp. Schutt saw her recently estranged ex-boyfriend, Odonis Parker, shooting from the side of the building. She grabbed her children, ran, and called 911 reporting that her ex-boyfriend, "Odonis Parker," had shot up a car and was trying to shoot her friend.

When the police arrived, Schutt reported that her ex-boyfriend, Parker, who was wearing a red hooded sweatshirt, shot at her. Two witnesses in a nearby apartment, Devin Polston and Barbara Rogan, could not identify the shooter by name, but they agreed that he was wearing an orange or red hoodie and carrying a big, long gun that required two hands to hold. Rogan saw the shooter run up some stairs to the highest floor of a nearby apartment building. Wash had never met Parker and also could not identify the shooter but testified that the shooter was wearing an orange or red hoodie.

The police officers' investigation of the scene uncovered a live round of 7.62 ammunition and a spent shell casing near the Sonata, and bullet holes in the grille on the front of the car. They found a cell phone lying in the grass near Schutt's apartment building and a Ford Fusion in the parking lot with a red hoodie lying across the center console.

As the police were collecting evidence, Parker walked out of a neighboring apartment building, and when Schutt identified him as the shooter, the police took him into custody. He had two sets of keys with him. As the police pushed the buttons on one key fob, the lights of a Ford Fusion alighted, and the trunk popped open. The police officers towed the Fusion

to the crime scene garage where they found the following: a men's 2XL red Chicago Bulls hooded sweatshirt between the console and the driver's side seat, Parker's debit card, and several pieces of paperwork with Parker's name on them, and an SKS rifle in the trunk with one magazine and a round of ammunition in the chamber. There was no evidence of any tampering with or damage to the door or trunk locks or the ignition.

A grand jury charged Parker with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The only element of the crime at issue was whether Parker possessed the firearm. Prior to trial, Parker filed a motion to which the government objected, requesting voir dire questioning of prospective jurors on various topics including the importance they might assign to DNA evidence. The district court judge declined to ask these questions, finding them unnecessary to seating a fair and impartial jury and noting his concern with asking questions that advocate a party's theory of the case (in this case, according to the judge, a generalized theory that the government's work was sloppy). R. 18 at 18–19. And, consequently, the district court barred Parker from discussing a lack of forensic testing during his opening statement, until such time as the court could determine whether that line of questioning was admissible. The court stated that if the defense laid the proper foundation for an attack on the forensic work, it could ask those types of questions of the witnesses during cross examination and then include argument about the lack of forensic testing in the closing argument.

At trial, the owner of the Ford Fusion testified that on the day of the shooting she loaned the car to her then-boyfriend Parker, among others, and that the keys the police found with

Parker were the only set of keys to the vehicle. She also testified that she had never before seen the gun found in the trunk. The Indiana State Police forensics firearm examiner testified at trial that the spent cartridge and live round found near Wash's car were fired from the rifle found in the trunk of the Ford Fusion.

The government also called the crime scene investigator, Robert Wilcox, who testified that he submitted the firearm and magazine for fingerprint testing, but did not submit any bullets, explaining that generally it is not possible to procure fingerprint evidence from bullets. He also confirmed that he did not check the firearm for any visible prints or attempt to collect hair and fiber samples from the sweatshirt. During cross examination, Parker's counsel asked Wilcox if he collected any DNA samples from the gun. The government objected arguing that, as neither side was calling a DNA expert, and DNA evidence was not before the jury, the question was inappropriate. The district court prohibited the question under Federal Rule of Evidence 403, noting that Parker was not challenging the reliability of any specific investigative steps the government took and was instead impermissibly arguing generally that the government's investigation was shoddy because it did not attempt DNA testing. The district court surmised that this would introduce significant confusion, as it was inviting the jury to speculate as to what the tests might reveal.

Finally, the police department's latent fingerprint examiner testified that he found no prints of value on the gun or magazine. He testified that over the course of eighteen years and thousands of examinations, it was uncommon to find

prints on firearms, and that he had never found a usable print on a live round or shell casing.

In closing, Parker argued that the government failed to prove its case as no fingerprints were found on the gun and the identification from Schutt, his biased ex-girlfriend, was insufficient to establish guilt. He also argued that the police department failed to develop any other persons of interest. Parker's counsel noted for the jury that the Indiana State Police have a DNA section but did not submit any DNA evidence to that lab.

After the two-day trial, the jury convicted Parker after approximately forty minutes of deliberations. The court later sentenced Parker to 114 months in prison followed by a two-year term of supervised release. Parker appealed, arguing that the district court violated his Sixth Amendment rights under the Confrontation Clause when it prohibited him from cross-examining the government witnesses about the lack of DNA evidence tying him to the firearm.

The government argues that Parker failed to raise the Confrontation Clause objection at trial and thus waived it, making it subject only to plain error review. Parker asserts that although "the specific words 'confrontation clause' were not used in the district court," the substance of the argument was properly raised. Parker Reply Brief at 5. We need not resolve this issue, because even if we assume that Parker properly preserved the argument, and even if we were to determine that the district court erred by disallowing the proposed cross examination, any error would have been harmless.

An error is harmless if "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the

verdict obtained.'" *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003). "The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Stewart*, 902 F.3d 664, 683 (7th Cir. 2018) *citing United States v. Curtis*, 781 F.3d 904, 911 (7th Cir. 2015). An error is harmless where there is overwhelming evidence guilt. *United States v. Shelton*, 997 F.3d 749, 773 (7th Cir. 2021) ("We may affirm if the error did not substantially influence the verdict because other untainted incriminating evidence is overwhelming."); *United States v. Guzman-Cordoba*, 988 F.3d 391, 405 (7th Cir. 2021), *reh'g denied* (Mar. 8, 2021) (finding harmless error where the cumulative weight of guilt was overwhelming); *United States v. Groce*, 891 F.3d 260, 268 (7th Cir. 2018) (Even if the court violates a defendant's Sixth Amendment rights by barring cross examination that should have been permitted, that error is harmless if there is overwhelming evidence of guilt.). A Confrontation Clause error is harmless if the excluded testimony would have contributed "little, if any, new information for the jury's consideration." *United States v. Martin*, 618 F.3d 705, 731 (7th Cir. 2010), *as amended* (Sept. 1, 2010).

In this case, it is beyond reasonable doubt that any exclusion of cross examination about the DNA evidence did not contribute to the verdict obtained. The evidence of Parker's guilt was overwhelming. First and foremost, Parker's former girlfriend identified Parker as the shooter in the heat of the moment in her panicked 911 call. She identified him as the shooter again, when the police arrived on the scene, and a third time, under oath, at trial. The rifle used to shoot at Wash, Schutt, and her three children was found in Wood's Fusion. Wood testified that she had loaned the car to Parker that day,

and when Parker was apprehended just after the shooting coming out of a nearby apartment building, he was holding the only set of keys to the Fusion. Inside the car police found a red sweatshirt that two witnesses and a victim described the shooter as wearing, Parker's debit card, and several different pieces of paperwork with Parker's name on them. Ballistics experts identified the shell casings by the victim's car as having come from the rifle in the trunk of the Ford Fusion.

Parker argues that the crux of his strategy was to cast reasonable doubt that he possessed the firearm, arguing that the only eyewitness who could identify him by name was biased and her identification was not backed by forensic evidence. Pointing out the lack of forensic evidence, he argues, was essential to his case. Information about the police department's failure to conduct DNA testing, however, would have added little, if anything to Parker's defense. The jury already knew that the police did not find any fingerprint evidence on the weapon, magazine, or bullets and that the police did not look for hair and fiber samples. This was not a case made or broken on forensic testing. It was an eye-witness case—with circumstantial evidence as nails that sealed the coffin shut. Indeed, the government lacked forensic evidence, but the circumstantial evidence was robust—the car keys, the documents with Parker's name, the identification of a man in a red hoodie, the red hoodie in the car, and Parker's proximity to the scene of the crime.[2] The additional evidence, or rather lack thereof—

---

[2] The jury also heard phone calls that Parker made from prison from which the jury could surmise that Parker was admitting guilt, or at least that he had dropped the cell phone that the police found at the scene of the crime. See R. 78 at 289-93. The government does not rely on these phone calls on appeal.

that the police also did not test the weapons for DNA—would have added little or nothing for the jury's consideration. Consequently, we can conclude that any error would have been harmless.

The judgment of the district court is AFFIRMED.