In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2615

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NATHANIEL J. JACOBS, SR.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:20-cr-9 — **Richard L. Young**, *Judge.*

———————————

ARGUED DECEMBER 4, 2023 — DECIDED APRIL 18, 2025

———————————

Before ROVNER, SCUDDER, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* A jury found Nathaniel Jacobs guilty of several drug and gun possession offenses, as well as witness tampering. Jacobs raises two issues for review. First, he argues the district court violated his rights under the Sixth Amendment by not allowing him to confront his ex-girlfriend about possible bias arising from state criminal charges pending against her. Second, he argues the district court erred by

admitting into evidence drugs found in Jacobs's home. We affirm.

## I.   BACKGROUND

### A. Factual Background

On the morning of January 31, 2020, Jacobs appeared at the Deaconess Midtown Hospital in Evansville, Indiana, with a gunshot wound to his hand. The hospital contacted local police to investigate. Detective Michael Evans was assigned to the case, and, at the hospital, asked Jacobs how he was shot. Jacobs responded that he was taking out the trash when two juveniles playing in a field nearby shot him.

Skeptical about Jacobs's story, Detective Evans asked whether Jacobs had shot himself. Jacobs confessed he had. He told Detective Evans that he inherited three guns from his late father-in-law, which he kept in a safe in his bedroom. That morning, he was attempting to retrieve money from the safe when a Derringer fell to the ground and fired, striking him in the hand. Jacobs admitted that he was not allowed to possess firearms as a convicted felon.

Law enforcement obtained a warrant to search Jacobs's home. The warrant allowed police to search for "firearms," "ammunition," "firearm accessories," "cell phones and other electronic devices used to store information or communications," a "safe," "video surveillance equipment," and proof of residency. In executing the warrant, officers discovered blood spatter and debris on the floor and a safe beside the bed in the primary bedroom. In front of the safe, officers found the loaded Derringer firearm that Jacobs had shot himself with. Officers also found ammunition boxes and two Smith & Wesson firearms.

The search uncovered drug-related evidence, as well. A nightstand next to the bed held tobacco cans labeled "ball" and "G." The cans contained baggies with a powdery substance that later tested positive for methamphetamine. Within an ammunition box and in the nightstand, there were note cards detailing quantities of methamphetamine, prices, and customers. In the kitchen and dining area, officers found additional drug paraphernalia, including a digital scale with methamphetamine residue, more baggies, and a plate with white powder. They also discovered four cell phones, which contained evidence of drug dealing such as text messages from customers telling Jacobs his prices were too high and a response from Jacobs that he only had "a ball" of methamphetamine to sell.

### B. Procedural Background

A grand jury indicted Jacobs with three counts of illegal possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1); possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and witness tampering, 18 U.S.C. § 1512(b)(1). After a change in defense counsel and several continuances, the district court scheduled the jury trial for May 31, 2022.

During pretrial proceedings, the government filed motions in limine. One of the motions in limine focused on Jacobs's girlfriend, Lisa Barton, who the government anticipated calling as a witness. The government maintained that evidence of Barton's misdemeanor convictions and pending felony criminal charges was inadmissible under Federal Rule of Evidence 609 to impeach her. *See* FED. R. EVID. 609(a). While Jacobs agreed concerning the misdemeanors, he maintained

that the facts surrounding the pending charges for dealing methamphetamine and carrying a handgun without a license in Vanderburgh County, Indiana, against Barton were "very relevant" to his case, as both Barton and Jacobs lived in the same home at the time of his arrest. At the final pretrial conference, the district court granted the government's motion.

Trial began on May 31, 2022. The government called twelve witnesses, including police officers, neighbors, and customers of Jacobs's drug operation. Officers testified about Jacobs's admission that he shot himself following his initial contention that a teenager had fired the shot. They also testified about evidence uncovered during their search of Jacobs's home. A neighbor recounted giving Jacobs empty tobacco cans in which methamphetamine was found and described observing Jacobs using a digital scale and selling drugs to customers at his home. Two customers also testified to buying drugs from Jacobs.

The jury also heard from Barton. On direct, Barton expressed discomfort about keeping guns in the home she shared with Jacobs and denied that the drug evidence and guns in the home belonged to her. When asked whether she suspected Jacobs was selling drugs from the home, she answered "yes" and said that Jacobs told her it was "none of [her] business." She also testified that while Jacobs was detained and awaiting trial, he suggested they get married to avoid testifying against each other. On cross-examination, however, Barton admitted that she and Jacobs had discussed getting married several times prior to Jacobs shooting himself.

Following her cross-examination, defense counsel requested permission to elicit testimony from Barton concerning her pending case in Vanderburgh County, Indiana.

Counsel acknowledged the court had previously ruled those topics off-limits, but represented that he believed he could still ask Barton whether she "had contact with law enforcement" and whether she was "in a vehicle" in which drugs and a handgun were found within a purse a few months after Jacobs's arrest. Counsel assured the court he would do so without asking Barton whether she had been convicted or charged. The judge told counsel that he would be allowed to make the offer of proof later.

Defense counsel renewed the request after the close of the government's case in chief. He reiterated that he did not intend to ask Barton about her pending charges, but urged that he should "be allowed to ask her about the facts of the traffic stop without asking her about any of the conditions that are going on with her case." Invoking the Sixth Amendment, he asserted that he believed the facts of the traffic stop and items uncovered in the vehicle search indicated Barton was "more involved than her testimony [suggested]." The court rejected this argument, allowing the prior ruling to stand.

The jury convicted Jacobs on all counts.

## II.   Discussion

On appeal, Jacobs argues the district court violated the Confrontation Clause of the Sixth Amendment by prohibiting him from confronting Barton about any potential bias or motive she had to testify favorably for the federal government in return for leniency in her state proceeding. He also argues the district court should have suppressed evidence of the drugs seized from his home on the basis that the drugs fell outside the scope of the search warrant, in contravention of the Fourth Amendment.

### A. Confrontation Clause Challenge

The Sixth Amendment guarantees criminal defendants an opportunity to effectively cross-examine witnesses at trial. *United States v. Martin*, 618 F.3d 705, 727 (7th Cir. 2010). Effective cross-examination occurs when a jury has enough information to assess the motive and bias of a witness. *United States v. Kaufmann*, 985 F.2d 884, 897 (7th Cir. 1993).

Jacobs argues the district court erred by failing to afford him an opportunity under the Sixth Amendment to explore Barton's potential bias in favor of the government. Specifically, Jacobs asserts he should have been permitted to probe whether Barton agreed to testify favorably for the government in return for leniency in her pending criminal case; or whether, more generally, she felt that testifying against Jacobs would have afforded her leniency even without a formal cooperation agreement.

The parties dispute the appropriate standard of review in assessing Jacobs's Sixth Amendment challenge. The government asks us to review for plain error on the basis that Jacobs's argument was forfeited. *See United States v. Harris*, 102 F.4th 847, 851 (7th Cir. 2024). As the government reasons, Jacobs articulated his Sixth Amendment challenge before the district court differently than he does on appeal. In the district court, Jacobs sought to use the traffic stop to establish that Barton was more involved in the criminal activity than her testimony suggested—in other words, to impeach Barton by contradiction. In contrast, the government argues, Jacobs now on appeal maintains that he was entitled to cross-examine Barton not to show her potential involvement in the criminal activity, but to show that she had a reason to testify favorably to the government.

Jacobs asks us to avoid finding forfeiture, and therefore avoid plain error review, because he invoked the Sixth Amendment below and because his bias argument is a permissible "twist" on his impeachment argument. Accordingly, Jacobs believes de novo review is appropriate. *See Martin*, 618 F.3d at 727.

We need not resolve whether Jacobs's Sixth Amendment challenge was adequately preserved, or whether the district court erred in rejecting that challenge. The resolution of those questions does not decide this case, because regardless of the standard applied or the presence of error, any error was harmless. *See United States v. Parker*, 11 F.4th 593, 596 (7th Cir. 2021) (declining to decide whether Confrontation Clause challenge was preserved when any error would have been harmless).

Even assuming a violation of the Sixth Amendment occurred, we will not set aside Jacobs's conviction if the Confrontation Clause violation was harmless beyond a reasonable doubt. *United States v. Turner*, 709 F.3d 1187, 1194 (7th Cir. 2013). "Whether an error is harmless beyond a reasonable doubt depends upon factors such as the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence and the overall strength of the prosecution's case." *Id.* at 1194–95 (quoting *United States v. Walker*, 673 F.3d 649, 658 (7th Cir. 2012) (internal quotations omitted)). We have found an error harmless, for instance, where the evidence of a defendant's guilt was "overwhelming." *Parker*, 11 F.4th at 596; *Martin*, 618 F.3d at 731.

Jacobs's conviction did not hinge on Barton's testimony nor credibility. Even had Jacobs shown Barton was more

involved in the criminal activity than she had let on, or that her testimony was the product of an effort to receive leniency in her criminal case, the evidence against Jacobs would have remained overwhelming. Barton's testimony was cumulative of, but not necessary to, the government's case.

Ample evidence, apart from Barton's testimony, supported the firearm charges. The jury saw photos of Jacobs standing near the safe in his bedroom with a Smith & Wesson on his left hip. Two of Jacobs's neighbors testified about Jacobs offering to sell them firearms, including a different Smith & Wesson, which Jacobs had allowed one of those neighbors to examine in his living room. Detective Evans testified that Jacobs admitted to inheriting three firearms from his late father-in-law and confessed to accidentally shooting himself in his bedroom with a loaded Derringer, which Jacobs's son testified that he had seen Jacobs possess. And customers of Jacobs testified to seeing Jacobs in possession of firearms when purchasing drugs from him.

There was also extensive evidence to support the drug charges. This included customers' testimony about purchasing methamphetamine from Jacobs; a neighbor's testimony about seeing Jacobs put the drug inside tobacco cans, weigh it on digital scales in Jacobs's home, and sell it to customers; and a detective's testimony as to evidence found in Jacobs's home, including note cards in Jacobs's handwriting that included drug amounts and customers.

Finally, the obstruction charge did not depend on Barton's credibility. The jury heard for itself recorded phone calls between Jacobs and Barton in which Jacobs stated that he did not want them to testify against each other; that "[t]he only way out of here is if we get married"; and that after he "get[s]

out of here," they could "get divorced." These statements were more than enough to sustain a conviction.

Because any error was harmless beyond a reasonable doubt, we do not reach the merits of Jacobs's Confrontation Clause challenge.

### B. Fourth Amendment Challenge

Jacobs also argues the district court should have suppressed the drug evidence seized in his home because that evidence was outside the scope of the search warrant in violation of the Fourth Amendment. Because Jacobs failed to file a suppression motion in the district court, we must first determine whether Jacobs's failure was the result of a calculated strategic decision or neglect. The government asserts this argument is waived because Jacobs failed to file a motion to suppress before trial and no good cause justified that failure.

Federal Rule of Criminal Procedure 12(b)(3)(C) requires motions to suppress to be made before trial if the basis for the motion is reasonably available at that time. If a defendant, out of neglect, fails to move to suppress the evidence in the district court, we attribute his omission to forfeiture. *United States v. Kelly*, 772 F.3d 1072, 1079 (7th Cir. 2014). However, before conducting plain error review of the forfeited argument, we first examine whether the defendant "has shown good cause for his failure to make a timely motion to suppress" in the district court. *United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005). Therefore, without good cause, we are foreclosed by Rule 12(c)(3) from reviewing Jacobs's suppression argument. *United States v. Hopper*, 934 F.3d 740, 761–62 (7th Cir. 2019); *see* FED. R. CRIM. P. 12(c)(3).

Jacobs asks us to find good cause based on instability with his trial counsel and a change in the law relating to sentencing, which he asserts caused turmoil and confusion precluding him from timely moving to suppress. The record does not support this assertion.

The district court appointed Jacobs new counsel approximately two weeks after his original lawyer withdrew from the case. It extended the pretrial period on multiple occasions, such that there were roughly ten months between the appointment of Jacobs's new counsel and the jury trial. This gave counsel ample time to assess any suppression claims and determine whether to file a motion. And in fact, the record indicates defense counsel represented to the district court that he did not think he had valid legal grounds on which to file a suppression motion. Consequently, the record does not show that instability with defense counsel or a change in the law precluded the timely filing of a motion to suppress. Rather, it shows counsel, after considering the matter, chose not to pursue a motion to suppress.

Even if Jacobs could demonstrate good cause, he is unable to satisfy the requirements of plain error review. *See United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024). In Jacobs's view, officers exceeded the scope of the search warrant by looking inside tobacco cans, which are too small to fit firearms. However, the warrant permitted officers to search Jacobs's residence for "ammunition" and "electronic devices used to store information or communications"—both of which may fit inside a tobacco can. When executing a warrant, officers may search "anywhere the items to be seized might likely be discovered, so long as that is within the place authorized to be searched." *Archer v. Chisholm*, 870 F.3d 603,

617 (7th Cir. 2017). As such, it would not be error to conclude that the officers were permitted under the Fourth Amendment to search the tobacco cans at issue.

### III.   CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.